THE STATE OF OHIO, APPELLEE, *v.* YANOWITZ, APPELLANT.

[Cite as State v. Yanowitz (1980), 67 Ohio App. 2d 141.]

(No. 39784—Decided February 22, 1980.)

*Mr. John T. Corrigan,* prosecuting attorney, for appellee. *Kahn, Kleinman, Yanowitz & Arnson Co., L.P.A.,* and *Mr. Bernard J. Stuplinski,* for appellant.

JACKSON, J. Defendant-appellant, Earle Yanowitz, was indicted by the Cuyahoga County Grand Jury for two counts of trafficking in drugs in violation of R. C. 2925.03, and one count of drug abuse in violation of R. C. 2925.11. Defendant entered pleas of not guilty to each count contained in the indictment and subsequently filed a motion to suppress evidence. Following a hearing, the court overruled the motion to suppress. Trial was then had before a jury, which found the defendant guilty of all three counts as charged in the indictment.

Defendant appeals from his conviction and assigns two errors for review:

"1. The trial court erred in overruling defendant-appellant's motion to suppress evidence when the supporting affidavit for the search warrant was based on hearsay declarations of an unidentified arrested male and did not contain sufficient facts to establish probable cause."

"2. The trial court erred in failing to take from the consideration of the jury evidence of marijuana seed, where the state offered no evidence to prove that the seed was capable of germination and not sterile."

On October 6, 1977, Detective John Hoyt, a narcotics investigator for the Lakewood Police Department, obtained a warrant authorizing the search of appellant's residence located in Lakewood, Ohio. The warrant was secured on the basis of the following affidavit:

"Before me, Harold J. Craig, Judge of the Municipal Court of Lakewood, Ohio, personally appeared the undersigned Detective John Hoyt, who being first duly sworn, deposes and says that he is a member of the Lakewood Police Department and that he has good cause to believe that on the premises of 12590 Lake Avenue, said premises further described as being a red colored brick, single family dwelling, located on the north side of Lake Avenue, in the City of Lakewood, State of Ohio, and presently being occupied by a white male identified as Earl Yanowitz, approximately 32 years of age, and by three unidentified females, there is now being unlawfully kept, concealed and possessed certain prop-

erty, to wit: cocaine, marijuana, a document of drug transactions.

"The facts upon which the affiant bases such belief are as follows:

"During the course of a narcotics investigation, Det. Hoyt learned the following information from Det. Richard Rutt, a member of the Cleveland Police Narcotic Unit.

"That Det. Rutt on October 6, 1977 has arrested a male for possession of cocaine [. D]uring the course of the arrest and investigation of the male arrested Det. Rutt learned that the cocaine that the male had that was arrested was to be delivered to 12590 Lake Rd. to a Earl Yanowitz. A telephone conversation between the arrested male and a male identifying himself as Earl Yanowitz was overheard by Det. Rutt and Yanowitz stated he wanted the arrested male to bring the cocaine over to his house, and that he had customers coming at 9:00 PM tonight. He stated his address was 12590 Lake Ave., and this was also overheard by Det. Rutt.

"The arrested male stated that he had been over to the house on Lake Ave. on numerous occasions, and that Yanowitz has always had marijuana in plain view in the house. He also stated that Yanowitz used cocaine and that he would have his own personal supply in the house, and that would be in addition to the 2 ounces of cocaine that he was to purchase.

"During the arrest of the male with 2 ounces of cocaine a notebook was found belonging to the male and in the notebook was the name Earl Yanowitz with a phone number***. Det. Neelon had [the] arrested male call this number and a male named Earl told the arrested male to get over there right away because he had customers waiting, and he already lost 400 dollars. Det. Neelon overheard the conversation.

"Predicated on the foregoing affiant avers that it is urgently necessary that the above described premises be searched in the night season forthwith to prevent the above named property from being concealed or removed so as not to be found.

"/s/ John Hoyt"

Detective Hoyt executed the search warrant on October 6, 1977, resulting in the confiscation of various bags and vials containing marijuana, cocaine and LSD.

Appellant contends in his first assignment of error that

the affidavit of Detective Hoyt is deficient and that the court erred when it overruled appellant's motion to suppress. The record in the case at bar does not show that additional evidence was obtained, recorded or made a part of the affidavit, pursuant to Crim. R. 41(C), to support a finding of probable cause. Therefore, the validity of the search warrant must be determined solely from the contents of the affidavit. *State* v. *Eichhorn* (1975), 47 Ohio App. 2d 227, 229.

From the inception, we recognize that courts of review generally allow the magistrate broad discretion to decide that probable cause exists in order to encourage law enforcement officers to seek warrants. *United States* v. *Ventresca* (1965), 380 U.S. 102, 108-109. The Ohio Supreme Court has recognized the preference to be accorded warrants. *State* v. *Karr* (1975), 44 Ohio St. 2d 163, 167, certiorari denied (1976), 426 U.S. 936.

When seeking a warrant, the affidavit should state sufficient facts to allow a magistrate, weighing the evidence in a commonsense manner, to make an independent judgment about probable cause. *United States* v. *Ventresca, supra,* at page 108; *Aguilar* v. *Texas* (1964), 378 U.S. 108, 111. An affidavit is not rendered deficient because it is based on hearsay statements of an informant, so long as there is "a substantial basis for crediting the hearsay." *Jones* v. *United States* (1960), 362 U. S. 257, 269. This may be accomplished through the application of the two-pronged test enunciated in *Aguilar:*

"***[T]he magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed,***was 'credible' or his information 'reliable.'***" *Aguilar* v. *Texas, supra,* at page 114. See, also, *Spinelli* v. *United States* (1969), 393 U.S. 410, 412-413.

Thus, *Aguilar* requires an examination of both the underlying circumstances upon which the informant based his conclusions, and the credibility of the informant. If the information from the informant is inadequate under *Aguilar* to establish probable cause, the court may consider other allegations in the affidavit which corroborate the information given by the informant. *Spinelli* v. *United States, supra,* at page

415; *United States* v. *Harris* (1971), 403 U.S. 573. For example, it was held in *United States* v. *Harris, supra,* at pages 579-581, that a finding of probable cause may rest on a tip from an untested informant who manifested personal knowledge of the criminal activity if other factors substantiate the suspect's involvement in the crime and thereby provide a basis for crediting the informant's statements. See, also, *United States* v. *Dudek* (C.A. 6, 1977), 560 F. 2d 1288, 1292-1293, certiorari denied (1978), 434 U.S. 1037, rehearing denied (1978), 434 U.S. 1089; *United States* v. *Gill* (C.A. 6, 1977), 555 F. 2d 597, 599.

In the case at bar, the affidavit averred that an unnamed male (hereinafter the "informant") was arrested for possession of cocaine on October 6, 1977, by Detective Richard Rutt of the Cleveland Police Narcotics Unit. The informant told Detective Rutt that the cocaine in his possession was supposed to be delivered to and purchased by the appellant. The informant stated further that he had been to appellant's residence on "numerous occasions," that the informant had always seen marijuana in appellant's house, and that appellant also had his own personal supply of cocaine. In a telephone conversation overheard by Detective Rutt between the informant and an individual identifying himself as the appellant, appellant told the informant to bring the cocaine as appellant had customers coming later that night. Appellant gave his address as 12590 Lake Avenue, Lakewood.

A notebook was found in the informant's possession following his arrest which contained the name and telephone number of the appellant. Cleveland Detective Neelon had the informant call the number in the notebook and listened to the conversation. Detective Neelon overheard an individual, who identified himself as the appellant, tell the informant to get over to appellant's house right away because he had customers waiting.

The information contained in the affidavit was prepared by Detective Hoyt of the Lakewood Police Department, as transmitted to him by Detective Rutt. The circumstances of double hearsay as alleged by appellant does not present a problem in the case at bar, if it can be reasonably inferred from the affidavit that the information contained therein was reliable. As the United States Supreme Court stated in *Aguilar, supra,* at page 114:

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, \* \* \*the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed,\* \* \*was 'credible' or his information 'reliable.'\* \* \*'" See, also, *Rugendorf* v. *United States* (1964), 376 U.S. 528, 533.

The central issue, then, is whether the affidavit presented a sufficient factual basis for the magistrate to conclude that there was probable cause to believe that contraband was to be found on the premises of the appellant.

While it is apparent from the affidavit that the informant was not known to the arresting officers prior to his arrest, the credibility of the informant was adequately established by the telephone conversation with appellant which corroborated the informant's story that he knew the appellant and was prepared to sell him cocaine. See *Spinelli* v. *United States, supra.*

To determine whether the second prong of the *Aguilar* test was satisfied, *i.e.,* the reliability of the underlying circumstances on which the informant based his conclusions, courts have generally looked for specific evidence indicating that the informant had some *personal knowledge* of the crime. See, *e.g., United States* v. *Kahan* (C.A. 2, 1978), 572 F. 2d 923, 929, certiorari denied (1978), 439 U.S. 833; *United States* v. *Fleming* (C.A. 8, 1977), 566 F. 2d 623, 625; *United States* v. *Gonzalez* (C.A. 2, 1977), 555 F. 2d 308, 312; *United States* v. *Dudek, supra,* at page 1293. Cf. *United States* v. *Craemer* (C.A. 6, 1977), 555 F. 2d 594, 596. In the present case, it should be emphasized that the search warrant was directed at the possession of controlled substances by appellant at his residence. The affidavit averred that the informant had visited appellant at his home on "numerous occasions" and had always viewed marijuana there. The informant further stated that he was aware that appellant also kept, in his home, a "personal supply" of cocaine. Therefore, the second prong of the *Aguilar* test was adequately established based on the personal knowledge of the informant. Cf. *State* v. *Gill* (1977), 49 Ohio St. 2d 177, 180-183 (Locher, J., dissenting).

However, the affidavit is silent as to when the informant visited appellant's residence, and when the contraband was viewed by the informant. Appellant argues that because the affidavit did not aver that any narcotics were *presently* in his home, and because narcotics are frequently moved or destroyed, there were insufficient facts to justify a conclusion that the subject contraband was probably at appellant's home at the time the warrant was issued.

If a substantial period of time has elapsed between the commission of the crime and the proposed search, the magistrate must have presented to him sufficient underlying facts to believe that the items seized are still on the premises before a warrant may be issued. Cf. *United States* v. *Matthews* (C.A. 9, 1977), 572 F. 2d 208, 209, and *United States* v. *Morris* (C.A. 5, 1978), 565 F. 2d 951, 953. Various federal circuit courts, as reviewed in *State* v. *Marko* (1973), 36 Ohio App. 2d 114, 118-119, have held that there is no arbitrary time limit on how old information contained in an affidavit may be, so long as there are sufficient facts to justify a conclusion that the subject contraband is probably on the person or premises to be searched at the time the warrant is issued. See *United States* v. *Johnson* (C.A. 10, 1972), 461 F. 2d 285; *Durham* v. *United States* (C.A. 9, 1968), 403 F. 2d 190; *United States* v. *Guinn* (C.A. 5, 1972), 454 F. 2d 29, certiorari denied (1972), 407 U.S. 911; *Schoeneman* v. *United States* (C.A.D.C., 1963), 317 F. 2d 173.

In the case at bar, the affidavit disclosed that the informant had "always" observed marijuana in appellant's premises during his "numerous" visits. This information clearly suggests a continuing pattern of behavior. That appellant was continuing this pattern of behavior at the time the warrant was issued was reinforced in the affidavit by the two telephone conversations which occurred on the date the warrant was issued between the informant and appellant. These conversations disclosed that appellant was engaged in a continuing course of conduct which involved the possession of illegal drugs. As the Court of Appeals for the Tenth Circuit pertinently stated:

"* * *Where the affidavit recites a mere isolated violation it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time. However,

*where the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant."* (Emphasis added.) *United States* v. *Johnson, supra,* at page 287.

Admittedly, the determination of probable cause in the case at bar is a close one. As the appellant correctly points out, the affidavit does not aver specific dates or that the marijuana, which the informant alleged he had always seen during his visits, was still in appellant's residence at the time of the warrant. The guiding policy for a reviewing court in such circumstances has been unequivocally stated by the United States Supreme Court: "***the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.***" *United States* v. *Ventresca, supra,* at page 109. See, also, *Jones* v. *United States, supra,* at pages 270-271. With the evidence in this posture, we are persuaded that the affidavit contained sufficient underlying facts which, in their totality, would justify a conclusion that there was marijuana in appellant's residence at the time the warrant was issued. Appellant's first assignment of error is not well taken.

Appellant contends in his second assignment of error that the trial court erred in overruling a defense motion for acquittal on Count II of the indictment. Count II of the indictment charged that defendant "***did knowingly possess a controlled substance, to-wit: Marijuana, being an amount equal to or exceeding three times the bulk amount.***" See R. C. 2925.03(A)(6). Bulk amount is defined in R. C. 2925.01(E)(3) as "[a]n amount equal to or exceeding two hundred grams of marihuana***." Appellant was, therefore, charged with possession of marijuana in an amount equal to or exceeding 600 grams.

In the state's case in chief, Ben Carlozzo, a chemist for the Ohio Bureau of Criminal Identification and Investigation, testified that State's Exhibit No. 6 consisted of 1 bag containing 138 grams of marijuana seeds and marijuana plant material; that State's Exhibit No. 7 consisted of six bags containing 1,186.9 grams of marijuana seeds and marijuana plant stems; that State's Exhibit No. 9 consisted of a box containing 488 grams of marijuana seeds and marijuana plant material; and that State's Exhibit No. 12 consisted of 9 vials containing

38.6 grams of marijuana plant material. Therefore, the total amount of marijuana material seized was 1,851.5 grams.

On cross-examination, Mr. Carlozzo testified that approximately 75 percent of the total contents of State's Exhibits Nos. 6, 7, 9 and 12, or approximately 1,388.6 grams, consisted of marijuana seeds. No evidence was offered by the state concerning whether the seeds were capable of germination. Appellant contends that since R. C. 3719.01(Q) excludes from the definition of marijuana "the sterilized seed of the plant which is incapable of germination," and since the state failed to prove that the seized seeds were capable of germination, it was error for the court to allow the jury to include 1,388.6 grams of seeds in determining the total amount of marijuana in the possession of appellant. Since the total amount of marijuana seized, excluding the seeds, was 463 grams, appellant argues that he could, at best, have been found guilty of violating R. C. 2925.03(A)(4) for possessing marijuana in an amount exceeding the bulk amount, but less than three times the bulk amount.

The issue raised herein by appellant is whether a matter excluded from the definition of marijuana by statute should be deducted from the total weight of the mixture possessed by the offender in determining whether he possessed a bulk amount. This issue is one of first impression in Ohio.

The provisions of R. C. 3719.01(Q) define marijuana as follows:

" 'Marijuana' means *all parts of any plant of the genus cannabis, whether growing or not, the seeds thereof;* the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds or resin. *It does not include* the mature stalks of the plant, fiber produced from the stalks, oils or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks, except the resin extracted therefrom, fiber, oil or cake, or *the sterilized seed of the plant which is incapable of germination.*" (Emphasis added.)

Appellant argues that since the sterilized seeds of the marijuana plant are not contraband under the statute, the burden is upon the state to prove, beyond a reasonable doubt, that the seeds are capable of germination, and hence, do not

come within the exclusion of R. C. 3719.01(Q). In support thereof, appellant cites two decisions from Florida and Nebraska. In *Purifoy* v. *State* (Fla. 1978), 359 So. 2d 446 and *State* v. *Infante* (1977), 199 Neb. 601, 260 N.W. 2d 323, the Supreme Courts of Florida and Nebraska, respectively, ruled that the state had the burden of proving, beyond a reasonable doubt, that the quantity of marijuana seized exceeded the statutory amount after excluding matter not included in the definition of marijuana.

In *Purifoy,* the defendant was convicted of possession of more than 5 grams of marijuana. The defendant contended on appeal that the stalks of the marijuana material which were seized should have been excluded from the amount introduced in evidence because stalks are specifically excluded from the statutory definition of marijuana. The defendant contended that the burden was upon the state to prove that the contraband, excluding the stalks, exceeded the statutory threshold of 5 grams. The Supreme Court of Florida agreed with this contention and concluded:

"In a case such as this, where a portion of the substance introduced by the state as contraband is claimed by the defendant to be non-prohibited matter, it becomes the state's burden to prove that the weight of the contraband matter alone exceeds the statutory threshold of five grams. To hold otherwise would not only place an intolerable burden on criminal defendants, but would contravene the fundamental rule that the prosecution must prove every essential element of the crime charged.***" *Purifoy* v. *State, supra,* at page 449.

In the case at bar, the language of R. C. 3719.01(Q) is unequivocal: marijuana seeds incapable of germination are not contraband. The state argues that the better interpretation of R. C. 3719.01(Q) is that all excepted parts of the marijuana plant (stalks, infertile seeds, *etc.*) should be excluded only when they are found by themselves, rather than mixed with the contraband parts of the plant. The state suggests that requiring deduction of excepted parts from a mixture would be a time-consuming practice and impractical.

While it may indeed be more difficult and time-consuming for laboratory analysts to determine the fertility of marijuana seeds, and to separate the statutorily excluded parts, it is

apparent from the language of R. C. 3719.01(Q) that this was the intent of the General Assembly. Moreover, we are persuaded that the rights of the defendant in such a matter are far more compelling.

It is a well-established principle that the state has the burden of proving each and every element of a crime beyond a reasonable doubt to sustain a conviction against an accused. *In re Winship* (1970), 397 U.S. 358. This burden may not be shifted to the defendant. *In re Winship, supra.* Nor may a state statute impose upon a defendant the burden of proving or disproving an element of the offense charged. *Mullaney* v. *Wilbur* (1975), 421 U.S. 684. To impose upon the accused the burden of proving that certain parts of a marijuana mixture are not contraband within the meaning of R. C. 3719.01(Q), and must be excluded in determining whether the statutory threshold has been exceeded, contravenes this basic rule.

Since the state failed to prove that the approximately 1,388.6 grams of marijuana seeds seized were contraband within the meaning of R. C. 3719.01(Q), *i.e.*, capable of germination, the seeds, therefore, were wrongfully included as evidence of contraband material in the case at bar. While the remaining 463 grams of marijuana material is indisputably contraband, that amount is not "equal to or exceeding three times the bulk amount," as charged in the indictment. There was, consequently, insufficient evidence to convict appellant under R. C. 2925.03(A)(6). However, the evidence is plainly sufficient to establish guilt under R. C. 2925.03(A)(4), which only requires possession of marijuana in an amount greater than the bulk amount, but less than three times the bulk amount, *i.e.*, between 200 and 600 grams.

Accordingly, the judgment of the Court of Common Pleas of Cuyahoga County is affirmed in part and reversed in part, and the cause is remanded for resentencing of the defendant pursuant to the provisions of R. C. 2925.03(A)(4).

*Judgment accordingly.*

STILLMAN, P. J., and PRYATEL, J., concur.