JOURNAL ENTRY AND OPINION
In these consolidated appeals,[1] defendant Raymond Litvin appeals from his convictions for possession of more than one kilogram of marijuana and possession of criminal tools. For the reasons set forth below, we affirm.
On September 24, 1997, defendant and Jennifer Litvin were indicted for possession of more than one kilogram of marijuana and possession of criminal tools. Jennifer Litvin pleaded guilty and cooperated with the state. Defendant pleaded not guilty and moved to suppress evidence obtained from the search of 2075 West 89th Street. Defendant maintained that the affidavit for the search warrant was insufficient to establish probable cause and that the police entered through an open door without knocking and identifying themselves, in violation of R.C. 2935.12.
The trial court subsequently determined that the affidavit for a search warrant was sufficient to establish probable cause and also concluded that the police credibly established that they knocked and announced their entry before forcefully entering to execute the search warrant. The trial court therefore denied the motion to suppress and the matter proceeded to trial on April 2, 1998.
For its proof, the state presented evidence that Det. Timothy Gaertner received information that drug sales were taking place at the West 89th Street residence which is owned by defendant. Over a two week period, he and his partner conducted periodic surveillance of the residence. They observed people coming to the residence, staying for a brief time, then leaving. On several occasions, the detectives observed defendant at the residence, entering, or leaving. They also observed a vehicle which defendant drives. Det. Gaertner also removed the trash from the tree lawn of the residence. Within the trash were several bills accrued for the premises in 1994 and listed in defendant's name and two plastic bags which were subsequently determined to contain marijuana residue.
On April 24, 1997, Gaertner obtained a search warrant and at approximately 7:30 p.m., that evening executed the warrant with members of the SWAT team and other narcotics investigators. Gaertner testified that defendant's twelve-year-old daughter Cory and a two year-old were present. In the dining room of the house, the officers found 217.48 grams of marijuana in a diaper bag. They also found a total of 4,048.1 grams in a garbage bag containing eleven large bags of marijuana. In addition, the of icers recovered pagers, a cellular telephone and a triple beam scale.
Jennifer Litvin returned home as the officers were executing the search warrant and she was arrested. She eventually decided to help implicate others in exchange for "some consideration" for her case.
Jennifer Litvin testified that she is married to defendant but divorce proceedings are pending.[2] She stated that she moved into defendant's West 89th Street residence in 1993 and married defendant a short time later. At this time, defendant sold drugs and Jennifer joined him in this endeavor. They typically kept eight to fifteen pounds of marijuana in the house at all times for sales and had ten to fifteen customers per day. Jennifer testified that the marijuana was defendant's and he brought it into the home and controlled it. She stated that she handled some drug sales for defendant but kept careful records for defendant because all of the money belonged to him and she did not want him to think that she was stealing rom him. Jennifer further stated that Ray brought the Triple Beam scale into the home for weighing drugs. Jennifer denied that she was separated from defendant at the time that the search warrant was executed.
On April 24, 1997, the couple left the residence at around 6:00 p.m., and Cory, defendant's daughter from a previous relationship, was watching the couple's two-year-old. Cory subsequently called the couple on the car telephone and spoke to defendant. After completing the call, defendant informed Jennifer that the police were raiding the house. He told Jennifer that he could not go back to prison and that Jennifer would only get probation because she had never been in trouble before. Defendant then got out of the car and Jennifer drove home and was arrested.
Jennifer spent three days in jail. After returning home, she spoke to defendant, who was still living in the home, and he again told her that she should "take the rap" because she had never been in trouble before.
Jennifer testified that she has subsequently moved from defendant's home and has cooperated with the police. She pleaded guilty to the charges but has not been sentenced. She expected to make a new start in Arizona, however, and she also admitted that her daughter was born with traces of cocaine in her system.
Cory Litvin testified that Jennifer Litvin is her step-mother and defendant is her father. Cory established that when the police entered with the search warrant, they told her to call defendant and indicate that there was an emergency at home and did not permit her to tell defendant that the police were there. She told defendant that there was an emergency and he said that he would return. Thereafter, Jennifer Litvin returned without defendant.
Cory testified on cross-examination, however, that Jennifer and defendant are separated and that defendant does not live at the West 89th Street residence. She also stated that Jennifer Litvin told her not to let defendant into the house when she was not home. She acknowledged, however, that on April 24, 1997, defendant picked her up to babysit, then Jennifer drove him to work.
Defendant elected to present evidence and presented the testimony of Greg Davis, William Schaefer, Gina Miller, and Cathleen Howatt.
Greg Davis testified that he and defendant have a carpet installation business. He stated that defendant lived with him in 1995 because defendant and Jennifer were having marital problems. Later, defendant moved into his friend Bill Schaefer's house. He claimed that he drove defendant to and from work, always meeting defendant at West 105th and Bosworth. On April 24, 1997, he drove defendant to work and dropped him off at West 105th and Bosworth after work, but he stated that defendant had another appointment in the evening. He also claimed that after Jennifer Litvin moved out of defendant's home, she possessed drugs at her apartment.
William Schaefer, Gina Miller and Cathleen Howatt testified that defendant lived with Schaefer from November 1995 until July 1997. Miller maintained that Jennifer possessed and sold drugs at this time. Miller also asserted that following her arrest in April 1997, Jennifer lost a job because she sold drugs at work. Cathleen Howatt testified that she observed Jennifer Litvin selling drugs. Defendant was subsequently convicted of both charges and was sentenced to concurrent terms of two years incarceration on the drug possession charge and one year incarceration on the criminal tools charge. Defendant now appeals and assigns three errors for our review.
Defendant's first assignment of error states:
THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS.
Within this assignment of error, defendant asserts that the trial court erred in granting the motion to suppress evidence seized in the search of the West 89th Street residence because the affidavit supporting the issuance of the search warrant contained information that was stale, unreliable and insufficient to establish probable cause. Defendant also complains that the police did not knock and announce their presence before entering the residence.
Where there has been no attack on the veracity of the affiant, the issue for review is whether the affidavit is sufficient "on its face" to establish probable cause and justify the issuance of the warrant. Franks v. Delaware (1978), 438 U.S. 154, 171,98 S.Ct. 2674, 2684, 57 L.Ed.2d 667.
 "In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, "the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity' and "basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."
Illinois v. Gates (1983), 462 U.S. 213, 238-239, 103 S.Ct. 2317,76 L.Ed.2d 527. The Supreme Court of Ohio also adopted this language in State v. George (1989), 45 Ohio St.3d 325. paragraph one of the syllabus.
Upon appellate review, the appellate court should not substitute its judgment for that of the magistrate by conducting ade novo review of whether the affidavit sufficiently provides probable cause for the warrant. State v. Brown (1994), 101 Ohio App.3d 227,230. Instead, the duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for concluding probable cause existed. State v. George, supra,
paragraph two of the syllabus. Doubtful or marginal cases should be resolved in favor of upholding the warrant. Id. at 330. AccordIllinois v. Gates, supra, at 237, fn. 10 (although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants)
With regard to defendant's contention that the information was stale, the court in State v. Carlson (1995), 102 Ohio App.3d 591,600-601, stated:
 Under the staleness doctrine, "staleness is not measured merely on the basis of the maturity of the information." United States v. Bucuvalas (C.A.1, 1992), 970 F.2d 937, 940. Consequently, "there is no arbitrary time limit on how old information [supporting probable cause] can be." State v. Jones
(1991), 72 Ohio App.3d 522, 526, 595 N.E.2d 485, 488. Rather, the test for staleness is whether the available information justifies a conclusion that contraband is probably on the person or premises to be searched. Id.; State v. Yanowitz (1980), 67 Ohio App.2d 141, 147, 21 O.O.3d 445, 449, 426 N.E.2d 190, 195.
In this instance, the affidavit stated in relevant part as follows:
 1. Within the past several weeks, information was received from a citizen about drug trafficking at the above described premises. Affiant recognized the name and address of the subject of the complaint from a search which resulted in an arrest at the above described premises on July 25, 1994, along with the seizure of over twenty (20) pounds of marijuana and over seven thousand dollars ($7,000.00) in cash.
 2. Periodic surveillance was conducted within the past two weeks during the day and evening hours which revealed moderate pedestrian traffic in the evening hours, in which the individuals would arrive, go to the front door, enter, stay a short time, exit, and then leave the vicinity. In the experience and training of affiant, this activity is indicative of drug trafficking.
 3. Within the past seventy hours, affiant removed several garbage bags from the treelawn of the premises. The contents were examined, and one clear plastic bag and one large black garbage bag were found with suspected marijuana residue. These bags were submitted to the Cleveland Police Department Scientific Investigation Unit, and tested positive for the presence of marijuana.
We agree with the trial court that this information provided a substantial basis upon which the magistrate could conclude that probable cause existed. The surveillance indicated moderate pedestrian traffic which was consistent with drug trafficking. This information was in turn consistent with the fact that an arrest had occurred at the premises in 1994 during which twenty pounds of marijuana and $7,000 in cash were recovered. In addition, the police had recently recovered marijuana residue from two bags in defendant's trash. Other items connected the trash to defendant. We therefore conclude that from the totality of these facts and circumstances there was, at the time the warrant was issued, probable cause to believe that a controlled substance such as marijuana would be found at the subject premises. See State v.Brown (1984), 20 Ohio App.3d 36, 38.
As to the requirement that the police knock and announce themselves before entering, R.C. 2935.12 provides in part, as follows:
 "(A) When making an arrest or executing an arrest warrant or summons in lieu of an arrest warrant, or when executing a search warrant, the peace officer, law enforcement officer, or other authorized individual making the arrest or executing the arrest or summons may break down an outer or inner door or window of a dwelling house or other building, if, after notice of his intention to make the arrest or to execute the warrant or summons, he is refused admittance, but the law enforcement officer or other authorized individual executing a search warrant shall not enter a house or building not described in the warrant."
If the provisions of this statute are not followed, the search may be constitutionally unreasonable and the results of the search may be suppressed. See State v. Valentine (1991), 74 Ohio App.3d 110,113. However, where the police knock and announce themselves but are not admitted, they may forcefully enter. State v. Amundson
(1996), 108 Ohio App.3d 438, 440; State v. Morgan (1988),55 Ohio App.3d 182, 185.
In this instance, the state presented evidence that the police did knock and announce their presence and that they had a search warrant. The police forcibly opened the door after there was no response. The defense insisted, however, that the door was open when the police arrived and that the police simply entered without knocking and announcing. The trial court concluded that the testimony offered by the state was more credible than the testimony offered by defendant and there is no basis for reversing that determination. Id.
In accordance with the foregoing, we are unable to conclude that the search of 2075 West 89th Street violated defendant's constitutional rights.
The first assignment of error is without merit.
Defendant's second assignment of error states:
 THE TRIAL COURT ERRED IN OVERRULING APPELLANT' S MOTION TO DISMISS AT THE CONCLUSION OF THE EVIDENCE.
Defendant next maintains that the trial court erred in denying his motion for acquittal pursuant to Crim.R. 29 because there was no evidence connecting him to the drugs or criminal tools.
The standard to be employed by a trial court in deciding a Crim.R. 29 motion is set out in State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus as follows:
 Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.
In this instance, the key dispute is whether defendant was in possession of the contraband discovered at 2075 West 89th Street. The state presented the testimony of Jennifer Litvin who indicated that defendant owned the residence, he resided there with her, and he sold drugs or directed her to sell drugs for him and to record the information and leave the money for him. The state's evidence also demonstrated that when the police arrived, Cory Litvin called her father; she did not call Jennifer. Further, even though Cory told her father that there was an emergency at the home, he did not return. Finally, the state presented evidence that during the periodic police surveillance, the police observed defendant at the residence at various times and also observed his vehicle. We therefore conclude that reasonable minds could reach different conclusions as to whether defendant possessed the drugs and contraband beyond a reasonable doubt. The trial court properly denied the motion for acquittal.
The second assignment of error is without merit.
Defendant's third assignment of error states:
 APPELLANT'S CONVICTION OF POSSESSION OF A CONTROLLED SUBSTANCE AND CRIMINAL TOOLS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 Defendant next asserts that his conviction is contrary to the manifest weight of the evidence.
In State v. Thompkins (1997), 78 Ohio St.3d 380, 387, the Supreme Court set forth the role of an appellate court in determining whether a judgment is against the manifest weight of the evidence:
 When a court of appeals reverses the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. Tibbs [v. Florida (1982), 457 U.S. 31,] at 42, 102 S.Ct at 2218, 72 L.Ed.2d at 661. See, also, State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219. 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should only be granted in the exceptional case in which the evidence weighs heavily against the conviction.")
Moreover, the credibility of witnesses and the weight attributable to their testimony are primarily matters for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
Applying the foregoing, we are unable to conclude that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The state's witnesses competently and credibly established that defendant possessed the drugs and criminal tools found at the residence. The theory advanced by the defense, that Jennifer Litvin was the sole possessor of the drugs and criminal tools, and that defendant did not live at the residence due to marital problems, was simply not credible. It is not logical that in a period of prolonged marital strife, defendant would permit Jennifer to live at his house while he stayed at a friend's house and slept on a couch, but nonetheless had Jennifer drive him to his work appointments. Further, the contention that Jennifer was the sole adult occupant and solely owned the drugs is undermined by Cory's telephone call to defendant, not Jennifer, when the police arrived. Finally, defendant's failure to return home when his daughter stated that there was an emergency there strongly undermines him claim of innocence.
The third assignment of error is without merit.
Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, J., AND
 MICHAEL J. CORRIGAN.J., CONCUR.
 ANN DYKE PRESIDING JUDGE.
[1] "Case no. 74564 apparently derives from defendant's conviction for violating his probation. Defendant's appellate counsel has informed us that this conviction has been vacated and appeal no. 74564 is now moot.
[2] We note that by voluntarily choosing to testify, Jennifer Litvin was a competent witness. See Evid.R. 601(B)(2). In addition, as to the issue of whether her testimony was privileged pursuant to R.C. 2945.42, a review of the record reveals that defendant never objected to the questions that the state posed to her. Failure to object at trial on the basis of spousal privilege constitutes a waiver of this argument. State v. Savage (1987),30 Ohio St.3d 1, 3-4; State v. Adamson (Jan. 10, 1984), Brown App. No. CA-92-05-011, unreported, at 4.