[Cite as *State v. Richardson*, 2012-Ohio-1232.]

IN THE COURT OF APPEALS FOR GREENE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. CASE NO. 2011 CA 2 |
| Plaintiff-Appellee | : | |
| | : | T.C. NO.  10CR215 |
| v. | : | |
| | : | (Criminal appeal from |
| RAYMOND J. RICHARDSON | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the     23rd     day of     March     , 2012.

. . . . . . . . . .

ELIZABETH A. ELLIS, Atty. Reg. No. 0074332, Civil Division Chief, 55 Greene Street, First Floor, Xenia, Ohio 45385
    Attorney for Plaintiff-Appellee

JAY A. ADAMS, Atty. Reg. No. 0072135, 424 Patterson Road, Dayton, Ohio 45419
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1}    Raymond J. Richardson appeals from his convictions and sentences following a no-contest plea to several drug-related charges and having a weapon while under disability.   In his sole assignment of error, Richardson challenges the trial court's denial of his motion to suppress evidence insofar as the motion related to a search of his home.

{¶ 2}    The record reflects that Richardson filed a three-branch motion on May 21,

2010. The first branch sought suppression of evidence seized during a search of his home on the grounds that there was no probable cause for the warrant, the warrant lacked specificity, and the warrant was based on stale facts. The second branch sought suppression of a statement Richardson made to the police during the search. The third branch requested a bill of particulars. (The third branch was later withdrawn).

{¶ 3} The trial court subsequently held a hearing on Richardson's motion. The parties stipulated that the case presented a legal "issue for the court to decide based upon the four corners test." The only witnesses were Yellow Springs Detective Richard Miller and Sergeant Shawn Prall of the Greene County Sheriff's Office.

{¶ 4} Regarding the warrant, Miller testified about executing a search warrant at 3951 E. Summit Ridge Drive on March 16, 2010. According to Miller, he executed the warrant around mid-day. He first knocked on the front door and announced his presence to execute a warrant. After receiving no response, Miller and other officers forcibly entered the house and found Richardson inside. Prall testified that he spoke with Richardson while the residence was being searched. After being *Mirandized* by another officer, Richardson was asked whether he wanted to cooperate with police. According to Prall, Richardson responded, "I'm going to prison either way, so it doesn't matter." Richardson then invoked his *Miranda* rights. After Miller and Prall testified, the parties submitted, as a joint exhibit, a search warrant affidavit signed by then-Detective Prall and a copy of the search warrant itself.

{¶ 5} Thereafter, the trial court filed a July 30, 2010 entry, in which it sustained in part and overruled in part the motion to suppress. The trial court sustained the branch of

the motion that sought suppression of the statement Richardson had made about going to prison. The trial court overruled the suppression motion, however, insofar as it sought suppression of evidence obtained from inside Richardson's home. The trial court explicitly rejected Richardson's argument that Prall's affidavit had failed to establish probable cause for a warrant.

{¶ 6} Following the trial court's ruling, Richardson entered his no-contest plea. The trial court imposed an aggregate four-year prison term and ordered forfeiture of various items. This appeal followed.

{¶ 7} In his sole assignment of error, Richardson challenges the trial court's finding that Prall's affidavit was sufficient to establish probable cause for a search warrant. According to Richardson, the warrant was issued based on "unsubstantiated and uncorroborated evidence presented in the form of cooperation on the part of an untested informant[.]" Richardson argues that the issuing judge improperly ratified "bare bones" conclusions of Prall. Finally, he contends that the trial court "did not understand the facts, did not carefully read the affidavit or chose to impute a set of facts into this situation that were not presented to the issuing [j]udge."

{¶ 8} "In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989),

paragraph one of the syllabus, following and quoting *Illinois v. Gates*, 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

> **{¶ 9}** In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant. (Citation omitted.) *Id*. at paragraph two of the syllabus.

**{¶ 10}** An affidavit in support of a search warrant must present timely information and include facts so closely related to the time of issuing the warrant as to justify a finding of probable cause at that time. *State v. Jones*, 72 Ohio App.3d 522, 526, 595 N.E.2d 485 (6th Dist.1992). No arbitrary time limit dictates when information becomes "stale." *Id*. The test is whether the alleged facts justify the conclusion that certain contraband remains on the

premises to be searched. *State v. Floyd*, 2d Dist. Darke No. 1389, 1996 WL 139787 (Mar. 29, 1996). If a substantial period of time has elapsed between the commission of the crime and the search, the affidavit must contain facts that would lead the judge to believe that the evidence or contraband is still on the premises before the judge may issue a warrant. *State v. Yanowitz*, 67 Ohio App.2d 141, 147, 426 N.E.2d 190 (8th Dist. 1980).

{¶ 11} "Ohio courts have identified a number of factors to consider in determining whether the information contained in an affidavit is stale, including the character of the crime, the criminal, the thing to be seized, as in whether it is perishable, the place to be searched, and whether the affidavit relates to a single isolated incident." *State v. Ingold*, 10th Dist. Franklin No. 07AP-648, 2008-Ohio-2303. "[I]t is manifest that the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time. Whether the proof meets this test must be determined by the circumstances of each case." *Sgro v. United States*, 287 U.S. 206, 210, 53 S.Ct. 138, 77 L.Ed. 260 (1932).

{¶ 12} The officers searched 3951 E. Summit Ridge Drive on March 16. There was certainly a substantial basis to believe that at some point since January of 2010, Richardson had drugs delivered to him at that address and that he had engaged in drug trafficking from that address. Similarly, there was a substantial basis to believe that Richardson used other addresses and that, as then-Detective Prall averred, it is common for drug dealers to use multiple locations.

{¶ 13} The facts upon which the affiant (Sergeant Prall) based his belief that there was probable cause that drugs would be found at 3951 E. Summit Ridge are summarized as

follows (by paragraphs of the affidavit):

**{¶ 14}**  1.  He is an experienced law enforcement officer with extensive training.

**{¶ 15}**  2.  He was aware that a Columbus police officer had discovered a UPS package addressed to John Robinson, 354 Narrows Trace, in Xenia; a Franklin County search warrant on March 12, found that the package contained two buckets of marijuana, weighing 13.2 and 13.1 pounds.

**{¶ 16}**  3.  He observed 354 Narrows Trace on March 12, and the residence appeared to be occupied.

**{¶ 17}**  4.  A computer check determined that Joseph Biehn was the owner of that residence and that Biehn's driver's license listed that address.

**{¶ 18}**  5.  Greene County officers took control of the UPS package from the Columbus Police Department.

**{¶ 19}**  6.  On March 12, a Greene County undercover officer delivered the package and a female signed for it, but left it on the porch.  Several hours later, a juvenile took the package into the residence.

**{¶ 20}**  7.  The female who signed for the package left in a black Acura and was stopped by deputies; other officers made contact with Joseph Biehn at the residence and observed the UPS package.

**{¶ 21}**  8.  A detective made contact with CS [Confidential Source] #1 to "talk to him/her about the package that had been delivered earlier."

**{¶ 22}**  9.  CS #1 said he/she had received approximately five packages for a friend, Ray Richardson, for months.  CS #1 "knew it was something illegal."  In October

2009, he/she agreed to receive a package at his/her home for Richardson and has done so "at least five" times; he/she took two to Richardson's house, one was picked up by Richardson's housekeeper and "the other two" were picked up by "unknown persons." Four of these packages have been received since January 1, 2010; the two that were delivered to Richardson's house since January 1, were similar in size as the one delivered on March 12 [to Biehn's house].

{¶ 23}  CS #1 said the March 12 package was to be picked up by "Tasha." CS #1 "had phone contact" with Richardson, who was out of state, but Richardson told CS #1 to arrange the delivery of the package to Tasha. CS #1 told Tasha that he/she would not be able to "get the package to her on March 12, 2010."

{¶ 24}  CS #1 said he/she had purchased both marijuana and cocaine from Richardson at four different locations and would be able to identify them by sight. "CS#1 has provided information that has proven truthful and reliable through independent investigation."

{¶ 25}  10.  On March 12, CS #1 identified 3951 E. Summit Ridge Drive as Richardson's address to which he/she has delivered two packages since January 1, and at which he/she has purchased marijuana and cocaine from Richardson.

{¶ 26}  11.  On March 12, CS #1 called Tasha. A short time later, "Ray" called CS #1, and "Ray" became angry and threatening about CS #1's not being able to deliver the package that day.

{¶ 27}  13.  On March 13, CS #1 pointed out Tasha's residence on Sycamore Common Blvd. in Miamisburg, where CS #1 had purchased marijuana and cocaine from

Richardson and Tasha. A computer check indicated that Richardson and Tasha shared a common residence elsewhere. The report also indicated that Tasha owned a vehicle that had previously been owned by Richardson.

{¶ 28} 14. Later on March 13, CS #1 pointed out an address on Marshall Rd. in Kettering where he/she had purchased drugs from Richardson and "Kelly." Computer checks indicated that Kelly and Richardson had serially owned the same vehicle.

{¶ 29} 15. CS #1 then directed the officers to an apartment on Southdale where he/she had purchased drugs from Richardson.

{¶ 30} 16. On March 13, CS #1 called Tasha and advised her that he/she would be out of town until March 16 then would drop off the package at Richardson's or her house.

{¶ 31} 17. CS #1 identified Richardson and Tasha in photo lineups.

{¶ 32} 18. The drugs delivered to 354 Narrows Trace tested positive for marijuana.

{¶ 33} 19. DP&L records indicate that Richardson is the current customer at 3951 E. Summit Ridge Drive.

{¶ 34} 20. Drug traffickers use various devices and schemes to conceal their location, contraband, drugs, money, and related activities.

{¶ 35} In relevant summary, on March 12, 2010, a UPS package containing drugs was delivered to 354 Narrows Trace and signed for by a female. CS #1 told officers that approximately five times, including twice since January 1, 2010, he/she had delivered similar packages to Richardson at Richardson's house, 3951 Summit Ridge Drive. Richardson, who was out of state, told CS #1 to deliver the March 12 UPS package to Tasha,

and was threatening to CS #1 if this were not done immediately.

{¶ 36} Richardson claims that CS #1 was not a reliable source, and his/her information cannot form the basis for probable cause. Richardson's brief alleges that CS #1 was the female who was "pulled over leaving" 354 Narrows Trace on March 12 and who then "agreed to cooperate." However, such suppositions are not in the affidavit, the oral argument to the trial court, or the trial court's decision on the motion to suppress.[1] As far as the evidence before the court, the judge who issued the warrant did not know who CS #1 was or why he/she was supplying information.

{¶ 37} In response, the State argues that reliability was established because CS #1 was admitting to criminal activity and had further exposure if he/she were supplying false information to law enforcement officers; that is probably true of most informants and does not, in itself, establish reliability. Some of what CS #1 told the police (e.g., who lives in what houses, the telephone calls) did appear to be accurate and tended to corroborate her other statements.

{¶ 38} Even if we assume that the affidavit supported a conclusion that CS #1 was reliable, all the issuing judge knew was that CS #1 had previously picked up packages for Richardson and at sometime in the last 2½ months had delivered two of them to the Summit Ridge address. The affidavit indicates that the package of marijuana was delivered by an undercover officer to the Narrows Trace address, where a woman signed for the package. The package was later brought inside the house by a child. When officers subsequently

---

[1] The affiant continually refers to CS #1 as "he/she" in order to further conceal his/her identity, although the prosecutor, in oral argument, refers to CS #1 as "she" and says the package was picked up by "her."

made contact with Biehn at the Narrows Trace address, the package was clearly visible inside the house. The affidavit does not indicate when or how the package was transported to Richardson's home on Summit Ridge Drive, if it ever was transported.[2] Nor are there any specific statements in the affidavit that other drugs had recently been taken to Richardson's home. In short, the affidavit is devoid of support for the conclusion that drugs were likely present at the Summit Ridge address on March 16, when the search warrant was executed.

{¶ 39} The State suggests in its appellate brief that it is "common sense" that a drug dealer would not totally exhaust his product before obtaining more and that, regardless, there would still be associated nonperishable paraphernalia at the location. A court cannot take judicial notice of the inventory control practices of all drug dealers, and even the modus-operandi paragraph 20 of the affidavit does not support this contention. It is just as probable that Richardson's anger and threats may have reflected that he needed new marijuana and money to continue to engage in drug trafficking because he was otherwise out of this perishable product. There is no substantial basis to believe that drugs would be at that specific location, 3951 E. Summit Ridge Drive, on that specific date, March 16.

{¶ 40} The State asserts that, even if the information in the affidavit were insufficient to establish probable cause, we must affirm the trial court because the

---

[2]In oral argument to the trial court, the prosecutor stated that "not only was her [CS #1's] information confirmed through the video, * * * she was also surveilled going to the defendant's residence, delivering this package * * *." Similarly, in the statement of facts during the plea colloquy, the prosecutor stated that the "package * * * had been delivered which the defendant did accept delivery of that package." There is no reference in the affidavit to a video or any indication that the March 12 UPS package was delivered anywhere except 354 Narrows Trace.

exclusionary rule does not apply when an officer relies upon a search warrant in good faith.

{¶ 41}     "T]he Fourth Amendment exclusionary rule should not be applied so as to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause."  (Citation omitted.) *George*, 45 Ohio St.3d 325, 544 N.E.2d 640, at paragraph three of the syllabus.  The rationale for this "good-faith" exception is that when police have acted in good faith on a warrant issued by a judge or magistrate, there is no police misconduct and, thus, nothing to deter.  *Id.* at 331.  "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination[.]  * * *  Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations."  *United States v. Leon*, 468 U.S. 897, 921, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

{¶ 42}     The test for good-faith exception is "whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization."  *State v. Jones*, 72 Ohio App.3d 522, 528, 595 N.E.2d 485 (6th Dist.1991), quoting *Leon*, 468 U.S. at 922-923, fn. 23.  The officer's reliance on a magistrate's probable-cause determination must be objectively reasonable.  *George*, 45 Ohio St.3d at 331.  Suppression remains proper

> where (1) "* * * the magistrate or judge * * * was misled by information in
>
> an affidavit that the affiant knew was false or would have known was false
>
> except for his reckless disregard of the truth * * *"; (2) "* * * the issuing

magistrate wholly abandoned his judicial role * * *"; (3) an officer purports to rely upon "* * * a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'"; or (4) "* * * depending on the circumstances of the particular case, a warrant may be so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid."  *Id.*, quoting *Leon*, 468 U.S. at 923.

**{¶ 43}** In general, when determining whether reliance on the magistrate's probable cause finding was objectively reasonable, courts should confine themselves to the four corners of the affidavit.  *State v. Klosterman*, 114 Ohio App.3d 327, 333, 683 N.E.2d 100 (2d Dist.1996).  "It is clear * * * that the good faith reliance inquiry cannot extend to facts that support probable cause but which are not part of the affidavit."  *Id.*   However, there are many instances where the court may look beyond the four corners of the affidavit to determine whether the good-faith exception applies.  Such circumstances might include, for example, the fact that the officer had enlisted the assistance and advice of the prosecuting attorney in preparing the affidavit, the fact that a different magistrate had previously denied a search warrant on that affidavit, and the fact that the officer included false information in the affidavit.  *See id.*

**{¶ 44}** The trial court did not address the good-faith exception, and we will not rule on it at this time for two reasons.   First,

[i]f every court confronted with a novel Fourth Amendment question were to

skip directly to good faith, the government would be given *carte blanche* to violate constitutionally protected privacy rights, provided, of course, that a statute supposedly permits them to do so. The doctrine of good-faith reliance should not be a perpetual shield against the consequences of constitutional violations. In other words, if the exclusionary rule is to have any bite, courts must, from time to time, decide whether statutorily sanctioned conduct oversteps constitutional boundaries. [*Pearson v. Callahan*, 555 U.S. 223, 29 S.Ct. 808, 816, 172 L.Ed.2d 565 (2009)], noting that repeated avoidance of constitutional questions leads to "constitutional stagnation" (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). *United States v. Warshak*, 631 F.3d 266, fn. 13 (6th Cir.2011).

**{¶ 45}** Second, an appellate court's review of a suppression hearing presents a mixture of questions of fact and law. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100. As stated above, in determining whether the good-faith exception to the exclusionary rule applies, the court often may look beyond the four corners of the affidavit to determine whether the officer executing the warrant did so in good-faith reliance on the judge's issuance of the search warrant. (Internal citations and quotation marks omitted.) *State v. Mays*, 2d Dist. Montgomery No. 23986, 2011-Ohio-2684, ¶ 31.

**{¶ 46}** The assignment of error is sustained.

**{¶ 47}** Since the trial court did not address the factual questions involved with the possible applicability of the good-faith exception, we will reverse the trial court's judgment and remand the matter to the trial court for consideration of the good-faith exception. If the

trial court determines that the good-faith exception applies and again denies the portion of the motion to suppress related to the search of Richardson's home, the trial court may re-enter the convictions and sentences comprising the judgment. If the trial court grants this portion of the motion to suppress, it should proceed accordingly.

. . . . . . . . . .

GRADY, P.J., concurs.

HALL, J., dissenting:

{¶ 48} I disagree with the majority's conclusion that the judge who signed the warrant for the search of the defendant's residence lacked a substantial basis for finding probable cause to search. The trial court's overruling of the motion to suppress, relating to the search, should be affirmed for two reasons.

{¶ 49} First, the majority concludes that the affidavit for the search warrant does not support the conclusion that there likely are drugs present at Richardson's home. I disagree. The majority opinion recognizes that packages similar to the two five-gallon buckets containing twenty-six pounds of marijuana, which were awaiting delivery, had been received for the defendant five times. Four of the packages had been received by the informant in the last two and one-half months before issuance of the warrant. Two of those packages were then delivered to the defendant's residence. The other two similar packages had been received for Richardson by the police informant, but how, or whether, they were directly delivered to him is unclear. But Richardson was awaiting delivery of the current buckets of drugs. In my view, this information indicates that Richardson was a major drug trafficker using his residence as part of the distribution chain. I believe the on-going

trafficking enterprise made it reasonably certain that marijuana was present at the residence, and that constituted more than a probable cause belief. Nevertheless, even if the question of the presence of drugs is debatable, we should not substitute our judgment for that of the issuing judge.

{¶ 50} In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither the trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a *de novo* determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant. *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph two of the syllabus.

The judge who signed the search warrant had more than a substantial basis for concluding there was probable cause to believe that marijuana was present at the defendant's residence, and this court should not substitute its judgment for that of the judge who authorized the search.

{¶ 51} Secondly, and perhaps even more apparent, the issuance of the search

warrant does not depend only upon a fair probability that drugs were present at the defendant's residence. The search warrant affidavit includes allegations that the premises was connected with five felony offenses: Possession of Drugs, Trafficking in Drugs, Possession of Criminal Tools, Conspiracy, and Engaging in a Pattern of Corrupt Activity. The warrant authorized, among other things, a search for drugs, paraphernalia and criminal tools connected with manufacturing and sale of drugs, packaging, and any associated records, documents, or money. The affidavit reveals that the defendant was expecting delivery of his fifth load of two five-gallon buckets of marijuana to his house, out of which he had been selling drugs. In my opinion, there was a virtual certainty, let alone a fair probability, that he had packaging, scales, money, records, and other evidence of his criminal enterprise at the residence. We should defer to the magistrate's "practical, common sense decision * * * that contraband or evidence of a crime will be found * * *." *George,* supra, at paragraph one of the syllabus. I don't believe that the detectives should have to take the risks inherent in having buckets of drugs actually delivered to the defendant before they can search for the evidence and fruits of his apparent enterprise. Accordingly, I dissent.

. . . . . . . . . .

Copies mailed to:

Elizabeth A. Ellis
Jay A. Adams
Hon. Michael A. Buckwalter