JOURNAL ENTRY AND OPINION
Defendant-appellant, Joseph Casalicchio, appeals from his jury convictions for possession of drugs, possession of criminal tools, preparation of drugs for sale, all with a firearm specification, and having a weapon while under a disability. For the reasons that follow, we affirm appellant's conviction but remand for resentencing.
On July 26, 2000, appellant was indicted by the Cuyahoga County Grand Jury on a ten-count indictment: count one for the possession of cocaine, in violation of R.C. 2925.11, with a one-year firearm specification; count two for the possession of criminal tools, specifically, blank VIN plates, money, scales, bags and razor blades, in violation of R.C. 2923.24, with a one-year firearm specification; count three for the possession of criminal tools, namely, blank VIN plates, money, scales, bags and razor blades, in violation of R.C. 2923.24, with a one-year firearm specification; counts four through eight for having a weapon while under a disability, in violation of R.C. 2923.13; count nine for the receipt of stolen license plates, in violation of R.C. 2913.51, with a one-year firearm specification; and count ten for the preparation of marijuana for sale, in violation of R.C. 2925.07, with a one-year firearm specification. The charges arose out of the execution of a search warrant at appellant's home on February 24, 2000.
At the hearing on appellant's motion to suppress, City of Cleveland Police Detective James Cudo testified that as a result of information obtained from two confidential informants who had previously provided reliable information, he had conducted an ongoing investigation regarding possible drug activity at appellant's home. Through his investigation, Cudo learned that appellant, also known as "Corvette Joe," was selling large quantities of cocaine at his residence. Cudo testified that detectives had observed numerous vehicles going to appellant's residence and individuals exiting the vehicles and entering appellant's home but then leaving after only a short while. Cudo testified that such activity is typical of drug trafficking. Cudo testified further that detectives had stopped and searched one of the vehicles after it left appellant's home and found powder cocaine on the driver of the car. Cudo also testified that the police department had received several complaints from appellant's neighbors regarding the drug activity at appellant's home and one of the confidential informants had identified a picture of appellant as the individual from whom he had bought drugs at appellant's home.
Cudo testified further that as a result of his investigation, he learned that in December 1999, appellant had been involved in a shoot-out in his front yard when several of the neighborhood drug dealers attempted to break in to his home and steal four kilograms of cocaine from him. In November 1999, appellant reported another attempted break-in. The detective investigating the break-ins told Cudo that the front door to appellant's was barricaded and that appellant had a weapon in his home. Cudo testified that one of his confidential informants also told him that appellant usually wore a bulletproof vest. Consequently, Cudo concluded that a search of appellant's residence was high risk and, for the safety of the officers executing the warrant, it was necessary to conduct the search at night with the assistance of the SWAT Unit. Members of the SWAT Unit subsequently decided to use an armored vehicle to execute the warrant.
Cudo testified that the search began at approximately 9:45 p.m. on February 24, 2000. According to Cudo, the armored vehicle was parked directly in front of appellant's home and there were "numerous announcements" made over the public address system on the vehicle that "the police are here" and they were executing a search warrant. Cudo testified that no one came to the door or exited the home so SWAT Unit members knocked down the front door of appellant's home with a battering ram.
Mary Stepka, appellant's next-door neighbor, testified for appellant at the suppression hearing that she heard a boom and then someone yelled "Police." On cross-examination, however, Stepka admitted that she did not know what the boom sound was and it was possible that the police announced themselves before they entered appellant's home. Eugene Stepka, Mary's husband, testified that he did not know when the police arrived at appellant's home on February 24, 2000 or if they announced themselves.
Appellant testified that he had moved in with his girlfriend after the break-ins and was at his house on February 24, 2000 only to pick up some clothes for a Florida vacation he planned to take in the next several days. According to appellant, he was ready to go out the side door when he heard a boom. Appellant thought someone was trying to break in to his house again so he ran upstairs and hid. According to appellant, he would have opened the door if the police had announced themselves.
The trial court overruled appellant's motion to suppress and the case proceeded to trial. The State's evidence indicated that when the police entered appellant's home, they found him hiding under a couch with a loaded shotgun only inches away from him. During the subsequent six-hour search of appellant's home, the police recovered an extensive stockpile of weapons. In addition, they recovered various drug paraphernalia, including fourteen individually-wrapped bags of marijuana found in a shoebox; three freezer bags of marijuana found in a refrigerator; paper, straws, pill bottles and crack pipes with cocaine residue on them; scales; razor blades; and tools, bowls and strainers used to break down cocaine. The police also found $2470 in cash in denominations of $20, $50 and $100 bills in appellant's jacket pocket.
The police also found blank VIN plates with rivets in a toolbox in appellant's garage. Upon searching appellant's Corvette, which was parked in the driveway, the police found a bulletproof vest, straws with cocaine residue and a stolen license plate.
Upon questioning by the police after he was given his Miranda rights, appellant stated that he had so many guns in his house because he "liked guns" and collected and bought them. He also volunteered that he had lived at the house for the last twenty-five years and that no one lived there with him.
At the close of the State's case, the trial court granted appellant's Crim.R. 29 motion regarding count nine of the indictment, receipt of stolen license plates. The State also nolled count three of the indictment (possession of criminal tools) as duplicative of count two. On February 2, 2001, the jury returned a guilty verdict on the eight remaining counts and corresponding firearm specifications.
On February 27, 2001, the trial court sentenced appellant to a total of thirty-six months incarceration as follows: nine months on count one, possession of drugs, and one year incarceration on the firearm specification, to be served consecutively; six months on count two, possession of criminal tools; twelve months on count three, possession of a weapon while under a disability, and six months incarceration on count eight, preparation of marijuana for sale. The trial court ordered appellant to serve counts one and three consecutively; all other counts were ordered served concurrently. The trial court did not sentence appellant on counts four through seven, possession of weapons while under a disability, because those counts merged with count three.
Appellant filed a timely appeal, raising fifteen assignments of error for our review. Only one has merit.
 I. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT OVERRULED DEFENDANT'S MOTION TO SUPPRESS.
 II. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT DID NOT FIND THE SEARCH WARRANT TO BE CONSTITUTIONALLY DEFECTIVE.
 III. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT MADE NO FINDINGS.
In his first two assignments of error, appellant contends that the trial court erred in denying his motion to suppress because the search was improper and the search warrant was defective. In his third assignment of error, appellant contends that the trial court erred in not issuing findings regarding its ruling on appellant's motion to suppress despite appellant's request for such findings.
Appellant contends that search was improper because the police violated the "knock and announce" rule set forth in R.C. 2935.12 by not knocking before forcibly gaining access to his home. In State v. Brooks (Feb. 27, 1986), Cuyahoga App. No. 50384, unreported, this court, in considering the "knock and announce" rule, stated, "the police need not show that they knocked where they forced entry, so long as they gave the occupants a reasonable opportunity to respond."
Here, Detective Cudo testified that when the police executed the warrant, they positioned the armored vehicle in front of appellant's home and uniformed and plain-clothed officers around appellant's home. He testified further that there were numerous announcements over the public address system that "the police are here" and they were executing a search warrant. Finally, Cudo testified that the armored vehicle battered down the front door to appellant's home only after there was no response to the many announcements. In light of Detective Cudo's testimony, it is apparent that the police complied with the "knock and announce" rule set forth in R.C. 2935.12.
Appellant next complains that the trial court erred in denying his motion to suppress because the search warrant was defective.
Crim.R. 41(C) sets forth the standard for issuing search warrants, and provides in part:
 A warrant shall issue under this rule only on an affidavit or affidavits sworn to before a judge of a court of record and establishing the grounds for issuing the warrant. The affidavit shall name or describe the person to be searched or particularly describe the place to be searched, name or describe the property to be searched for and seized, state substantially the offense in relation thereto, and state the factual basis for the affiant's belief that such property is there located. If the judge is satisfied that probable cause for the search exists, he shall issue a warrant identifying the property and naming or describing the person or place to be searched. The finding of probable cause may be based upon hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished.
In Illinois v. Gates (1983), 462 U.S. 213, the United States Supreme Court instructed magistrates to utilize a totality-of-the-circumstances approach when assessing whether probable cause exists to issue a search warrant. The magistrate is:
 to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for * * * conclud[ing]" that probable cause existed. Jones v. United States, 362 U.S. 257, at 271.
The validity of a search warrant must be determined solely from the contents of the affidavit. State v. Smith (1997), Cuyahoga App. No. 70855, citing State v. Yanowitz (1980), 67 Ohio App.2d 141, 144. A reviewing court may draw reasonable, common-sense inferences from the facts alleged in the affidavit. State v. Bean (1983), 13 Ohio App.3d 69,72. Appellant first argues that there were insufficient allegations in the affidavit supporting the search warrant to warrant night entry. We disagree. The affidavit for the warrant, signed by Detective Cudo, indicated that in December, 1999, appellant had been involved in a shoot-out with two males who had attempted to break in to his house. Thus, it was apparent that appellant had at least one gun in his home. Moreover, Detective Cudo testified that he had obtained information from the detective investigating the break-ins at appellant's home that the front door to appellant's home was barricaded. Furthermore, the affidavit alleged that, in light of Detective Cudo's experience with drug dealers, it was likely that there were several persons engaged in drug trafficking occupying the home and these person would likely have weapons. These statements were clearly sufficient to demonstrate that night entry into appellant's home was necessary to protect the officers executing the warrant.
Appellant then contends that the affidavit did not support a showing of probable cause nor adequately assert that there was contraband presently at appellant's home. This argument is likewise without merit. The affidavit stated that one of the confidential informants had purchased cocaine from appellant on numerous occasions. Furthermore, the informant stated that he had been upstairs at appellant's home, where he had observed large quantities of drugs, a scale and packing materials on a table. The affidavit verified the informant's historical reliability. The affidavit also identified the surveillance conducted on appellant's house and the results of that surveillance, some of it conducted only forty-eight hours prior to the request for the warrant. Accordingly, the totality of the circumstances cited by the officer in the warrant affidavit provided probable cause for the search. Furthermore, the time period between the last surveillance on appellant's home and the issuance of the warrant was sufficiently close to justify a belief that evidence of the crime would still be present at appellant's home. See State v.Yanowitz (1980), 67 Ohio App.2d 141.
Appellant next argues that the warrant was overly broad and only a general search warrant. The items to be seized are to be stated with sufficient particularity. State v. McGettrick (1988), 40 Ohio App.3d 25. The requisite specificity varies with the nature of the items to be seized. The key inquiry is whether the warrant could reasonably have described the items more precisely. State v. Benner (1988),40 Ohio St.3d 301, 307.
Here, the warrant authorized the seizure of:
 Cocaine and other narcotic drugs and/or controlled substances; instruments and paraphernalia used in taking or preparing drugs for sale, use or shipment; record of illegal transactions in any media (including, but not limited to, computers, disks, accessories and their contents); articles of personal property and papers tending to establish the identity of the persons in control of the premises; other contraband, including, but not limited to, money, communications equipment (including answering machines, pagers and their contents); and weapons being illegally possessed therein; and/or any evidence pertaining to the violations of the drug laws of the State of Ohio.
The items identified by the warrant would all be connected to the investigation of drug possession or trafficking. The evidence was therefore sufficiently identified.
We similarly reject appellant's assertion that the seizure of guns from his home was not authorized under the warrant. The warrant authorized the seizure of any "weapons being illegally possessed therein." As a convicted felon, appellant was prohibited pursuant to R.C. 2923.13 from "acquir[ing], hav[ing], carry[ing] or us[ing] any firearm or dangerous ordnance." Accordingly, the weapons found in appellant's home were indeed "illegally possessed therein."
Finally, appellant contends that the trial court denied him due process of law by failing to issue findings regarding its ruling on his motion to suppress despite his motion for such findings.[1]
Contrary to the State's argument, appellant did not waive his right to such findings. Our review of the record indicates that the hearing on appellant's motion was held on January 30, 2001. The trial court denied appellant's motion and trial commenced the same day. Trial continued on January 31 and February 1, 2001. The jury was charged the morning of February 2, 2001 and returned a verdict the same day. Appellant filed his written motion for findings regarding the trial court's ruling at 9:14 a.m. on February 1, 2001 — while the trial was still in progress. Thus, contrary to the State's assertion, appellant made a timely request for findings.
Crim.R. 12(E) mandates that a trial court state its essential findings on the record when factual issues are involved in determining the motion. This court, however, adheres to the view that a trial court's failure to provide its essential findings on the record is not fatal where the record provides a sufficient basis to review appellant's assignment of error regarding the motion. State v. King (1999),136 Ohio App.3d 377, 381. Here, although the record is devoid of the trial court's findings of facts, it is sufficient to allow a full review of appellant's claim on appeal regarding his motion to suppress. Accordingly, we find no denial of due process in the trial court's failure to provide its essential findings on the record.
Appellants first, second and third assignments of error are therefore overruled.
 IV. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT OVERRULED HIS MOTION CONCERNING THE ALLEGATION OF A PRIOR CONVICTION.
 IX. DEFENDANT WAS DENIED A FAIR TRIAL WHEN THE COURT ALLOWED CROSS-EXAMINATION CONCERNING DEFENDANT'S DRUG USE.
Appellant's fourth and ninth assignments of error allege that he was improperly prejudiced by the admission at trial of evidence regarding his prior felony drug conviction and drug use. We find no error.
The State must provide sufficient proof necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of an offense. State v. Smith (1990), 68 Ohio App.3d 692, 695, citing In reWinship (1970), 397 U.S. 358, 364. When a previous conviction is an element of an offense, the State must prove the prior offense beyond a reasonable doubt. Id., citing State v. Weible (Mar. 15, 1989), Summit App. No. 13754, unreported. "A defendant is not entitled to bifurcated proceedings, nor may he waive jury trial on the prior conviction element alone." State v. Sweeney (1999), 131 Ohio App.3d 765, 773, citing Statev. Nievas (1997), 121 Ohio App.3d 451.
Counts four through eight charged appellant with having weapons while under a disability in violation of R.C. 2923.13, which provides:
 Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry or use any firearm or dangerous ordnance, if any of the following apply:
 (3) The person is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution or trafficking in any drug of abuse * * *.
In order to prove these charges against appellant, the State had to prove, beyond a reasonable doubt, that appellant was not relieved from disability as provided in R.C. 2923.14; that he knowingly acquired, had, carried, or used a firearm' and that he was under indictment for or had a prior felony drug conviction. Thus, proving a prior conviction was an essential element of the crime of having a weapon while under a disability. As a result, appellant had no right to a separate bench trial on the prior conviction element.
We also find no error with respect to evidence regarding appellant's drug use elicited by the State on cross-examination of a defense witness. Appellant admitted to a prior drug habit. Moreover, defense counsel argued repeatedly throughout the trial that the drugs found in appellant's home were there for his personal use and not for sale. Accordingly, appellant was not prejudiced by the testimony regarding his drug use.
Appellant's fourth and ninth assignments of error are therefore overruled.
 V. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT WOULD NOT ORDER DISCLOSURE OF THE CONFIDENTIAL RELIABLE INFORMANT.
In his fifth assignment of error, appellant argues that the trial court erred in refusing to order the State to reveal the identify of its confidential informant.
In Roviaro v. United States (1957), 353 U.S. 53, 62, the United States Supreme Court adopted a balancing test for determining whether the identity of a confidential informant should be revealed:
 The question calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.
The defendant bears the burden of establishing the need for disclosure. State v. Brown (1992), 64 Ohio St.3d 649, 653. Generally, when the degree of participation of the informant is such that the informant virtually becomes the State's witness, the balance swings in favor of requiring disclosure of the informant's identity. Conversely, where disclosure would not be helpful or beneficial to the accused, the identity of the informant need not be revealed. State v. Williams
(1983), 4 Ohio St.3d 74, 75. "The identity of an informant must be revealed to a criminal defendant when the testimony of the informant is vital to establishing an element of the crime or would be helpful or beneficial to the accused in preparing or making a defense to criminal charges." Id., syllabus. A trial court's decision regarding the disclosure of the identity of a confidential informant will not be reversed absent an abuse of discretion. State v. Feltner (1993),87 Ohio App.3d 279, 282.
In this case, the testimony of the informant was not vital to establishing any element of the case. As a result of the informant's information and subsequent police surveillance of appellant's home, law enforcement officers obtained a search warrant, found cocaine, marijuana, drug paraphernalia and weapons in appellant's home and charged appellant with drug possession, possession of criminal tools, having a weapon while under a disability and preparation of marijuana for sale. If appellant had been charged with selling drugs to the informant, rather than possession of drugs, testimony of the informant would have been vital to establishing an element of the offense. The informant's testimony was not necessary, however, to establish any element of the possession or preparation offenses with which appellant was charged.
Likewise, testimony of the informant would not have helped appellant in preparing or making his defense to the charges. As stated, appellant was charged with possessory offenses, not with the sale of drugs to the informant. Accordingly, there was no testimony from the informant that could exculpate appellant on these charges. Moreover, probable cause for the search warrant which led to appellant's convictions was supported not only by the informant's information but by the subsequent police surveillance of appellant's home as well as citizen complaints regarding alleged drug activity there. It is apparent that the informant could not have offered any exculpatory testimony regarding these bases for probable cause for the search warrant and, therefore, his or her testimony would not have aided appellant in his defense.
Accordingly, the trial court did not abuse its discretion in denying appellant's motion to disclose the identities of the confidential informant.
Appellant's fifth assignment of error is overruled.
 VI. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT OVERRULED HIS MOTION TO DISMISS COUNT TEN OF THE INDICTMENT.
Appellant was convicted of count ten of the indictment, preparation of marijuana for sale, in violation of R.C. 2925.07, which at the time of appellant's trial provided that "no person shall knowingly prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance * * *." For offenses involving preparation of less than 200 grams of marijuana, such as in this case, the offense was a fifth-degree felony punishable by imprisonment. (R.C. 2925.07
was repealed effective February 13, 2001. Offenses previously chargeable under R.C. 2925.07 are now included as trafficking offenses pursuant to R.C. 2925.03.)
R.C. 2925.11, regarding possession of drugs, provides that no person shall knowingly obtain, possess, or use a controlled substance. For offenses involving less than 200 grams of marijuana, the offense is a minor misdemeanor.
In his sixth assignment of error, appellant argues that the provision in R.C. 2925.07 providing that preparation of less than 200 grams of marijuana for sale is a fifth-degree felony punishable by imprisonment is unconstitutional on equal protection and due process grounds because it provides a different punishment than that set forth in R.C. 2925.11 for the same offense. Appellant's argument is without merit. Even a cursory reading of the statutes indicates that the offenses are markedly different — one involving the preparation and distribution of marijuana for sale and the other involving strictly the possession of marijuana. Accordingly, no equal protection or due process rights are implicated by the two statutes.
Appellant's sixth assignment of error is overruled.
 VII. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT WOULD NOT PERMIT AN INSPECTION OF THE REPORT OF THE SEARCH.
In his seventh assignment of error, appellant contends that the trial court erred in denying his motion for an in camera review of Detective Cudo's police report regarding the search of his home. We find no error.
A criminal defendant cannot obtain a police report via discovery under Crim.R. 16. City of Cleveland v. Lane (Dec. 9, 1999), Cuyahoga App. No. 75151, unreported. Although an in camera review may demonstrate in certain cases that a defendant is entitled to a police report, courts have long held that a defendant is not entitled to further review of the record in question absent a showing that the record is potentially exculpatory or otherwise relevant to the preparation of a defense. Statev. Simmons (1993), 87 Ohio App.3d 290, 293. Here, appellant requested thein camera review but made no argument to the trial court regarding why the report was potentially exculpatory or even relevant. Likewise, he makes no argument on appeal regarding why the report was necessary to his defense. Without such a showing, the trial court did not err in denying appellant's motion.
Appellant's seventh assignment of error is overruled.
 X. DEFENDANT WAS DENIED A FAIR TRIAL BY REASON OF IMPROPER PROSECUTORIAL ARGUMENT.
In his tenth assignment of error, appellant contends that the prosecutor's closing argument was "a shopping list of improper argument."
A prosecuting attorney's conduct during trial does not constitute a ground for error unless the conduct deprives the defendant of a fair trial. State v. Apanovitch (1987), 33 Ohio St.3d 19, 24. "The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smithv. Phillips (1982), 455 U.S. 209, 219. The effect of the prosecutor's alleged misconduct must be considered in light of the entire trial. Statev. Maurer (1984), 15 Ohio St.3d 239, 266.
The test regarding prosecutorial misconduct in closing argument is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. State v. Smith (1984),14 Ohio St.3d 13, 14. A prosecutor is afforded wide latitude in closing arguments. State v. Jacks (1989), 63 Ohio App.3d 200, 210. It is within the trial court's discretion to determine if a prosecutor has gone beyond the bounds permitted. State v. Benge (1996), 75 Ohio St.3d 136. A judgment will not be reversed if it is clear beyond a reasonable doubt that, absent the prosecutor's remarks, the jury would have found the defendant guilty. State v. Loza (1994), 71 Ohio St.3d 61, 78.
Appellant objects to the prosecutor's comments during closing argument that: 1) it is illegal for a felon to have a gun; 2) most people do not wear bulletproof vests; 3) many automobile theft cases involve defendants who have altered VIN plates; and 4) the totality of circumstances suggested that appellant was guilty of drug possession and preparation of drugs for sale, even though only a small amount of drugs were found in his home.
Considered in the context of the entire trial and in light of the wide latitude granted the prosecution for closing argument, we are unable to conclude that any of these comments by the prosecutor denied appellant a fair trial. Appellant's tenth assignment of error is overruled.
 VIII. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT WOULD NOT GIVE DEFENDANT'S REQUESTED INSTRUCTION.
 XI. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT INSTRUCTED ON PRIMA FACIE EVIDENCE.
 XII. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT IMPROPERLY INSTRUCTED THE JURY ON CONSTRUCTIVE POSSESSION.
In his eighth, eleventh and twelfth assignments of error, appellant challenges the jury instructions.
Appellant first contends that the trial court erred in denying his motion for a special jury instruction. Appellant requested the following special instruction:
 Pursuant to Article I, Section 4 of the Ohio Constitution, the people have the right to bear arms for their defense and security. If you find that any weapons found in the home of the defendant were for his defense and security, you must find defendant not guilty.
Ordinarily, requested instructions should be given if they are correct statements of the law applicable to the facts of the case. Ward v.Marymount Hospital (Oct. 12, 2000), Cuyahoga App. No. 76973, unreported, citing Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585, 591. When reviewing a trial court's jury instructions, an appellate court considers whether the trial court's refusal to give a requested jury instruction was an abuse of discretion under the facts and circumstances of the case. State v. Wolons (1989), 44 Ohio St.3d 64, 68. Here, the trial court did not abuse its discretion in refusing to give defense counsel's requested instruction because neither the law nor the facts warranted the instruction.
R.C. 2923.13 provides that a person convicted of prior felony drug offenses, such as appellant, shall not "knowingly acquire, have, carry or use any firearm or dangerous ordnance." There is no statutory self-defense exclusion for persons under the weapon-carrying disability. Moreover, there was absolutely no evidence adduced at trial that the guns in appellant's home were there for his self-defense.
R.C. 2923.14 provides conditions for relief from the weapon-carrying disability. Appellant introduced no evidence, however, that he received or even sought relief under the statutory scheme. Accordingly, the trial court did not err in denying appellant's requested instruction.
Appellant also complains that the trial court erred in instructing the jury that:
 It is prima facie evidence of criminal purpose that the defendant possessed blank VIN plates with rivets, a bulletproof vest, VIN plates, money, scales, bags and razor blades, and such substance, device, instrument or article commonly used for criminal purposes, under circumstances indicating such item is intended for criminal use.
Appellant contends that this instruction deprived him of due process of law because it in effect eliminated the requirement that the State prove guilt beyond a reasonable doubt. We find no error.
R.C. 2923.24 provides:
 (A) No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally.
 (B) Each of the following constitutes prima facie evidence of criminal purpose:
* * *
 (3) Possession or control of any substance, device, instrument, or article commonly used for criminal purposes, under circumstances indicating the item is intended for criminal use.
Thus, the statute provides for an inference of criminal purpose when the substance, device, instrument or article is commonly used for criminal purposes and the circumstances indicate the item is intended for criminal use.
Here, Detective James Kennelly testified that he found a box containing a blank vehicle identification plate and two rosette rivets that attach the plate to the vehicle in appellant's garage. Detective Kennelly testified further that in light of his experience, the only reason to have a blank VIN plate is to use it to re-tag a stolen motor vehicle.
Detective Michael Demchak testified that he found three bags of marijuana and a foil packet in the refrigerator in appellant's home. Demchak testified that he had made over a thousand drug arrests and in light of his extensive experience, the bags of marijuana found in appellant's refrigerator were consistent with drug trafficking.
Detective Cudo testified that he found storing devices, packing materials, scales, razor blades, bowls, tools and strainers on a table in a room on the second floor of appellant's home. Cudo testified this paraphernalia was "everything that was needed to break down cocaine and package it" for sale.
In light of this testimony, and the absence of any testimony whatsoever suggesting that the items found in appellant's home were used for anything other than criminal purposes, the State was entitled to the statutory presumption in favor of criminal purpose. Accordingly, the trial court did not err in so instructing the jury.
Finally, appellant contends that the trial court erred in instructing the jury that:
 Knowledge of illegal goods on one's property is sufficient to show constructive possession. However, the mere fact that property is located within premises under one's control does not, of itself, constitute constructive possession. It must also be shown that the person was conscious of the presence of the object.
Appellant contends that this instruction was "improper and unconstitutional" because it creates an improper presumption of guilt in favor of the State.
Appellant's argument was considered and rejected by this Court in Statev. Franklin (May 10, 2001), Cuyahoga App. No. 77385, unreported. The instruction is a correct statement of the law. See, State v. Hankerson
(1982), 70 Ohio St.2d 87, certiorari denied, 459 U.S. 870; State v.Driggins (Dec. 2, 1999), Cuyahoga App. No. 74940, unreported; State v.Young (Jan. 24, 1991), Cuyahoga App. No. 57952. Moreover, it does not create an improper presumption. Franklin, supra.
Appellant's eight, eleventh and twelfth assignments of error are overruled.
 XIII. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT OVERRULED HIS MOTION FOR JUDGMENT OF ACQUITTAL AS TO PREPARATION OF DRUGS FOR SALE.
 XIV. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT OVERRULED HIS MOTION FOR JUDGMENT OF ACQUITTAL.
In his thirteenth and fourteenth assignments of error, appellant contends that the trial court erred in denying his Crim.R. 29 motions for acquittal regarding count one, possession of cocaine; counts four through eight, having a weapon while under a disability; and count 10, preparation of marijuana for sale, because the evidence was insufficient to support convictions on these counts.
A motion for acquittal will be sustained if the evidence presented is insufficient as a matter of law to permit a conviction. Crim.R. 29(A). A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. State v. Thompkins (1997), 78 Ohio St.3d 380, 390. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
R.C. 2925.11(A), regarding possession of drugs, provides that "no person shall knowingly obtain, possess, or use a controlled substance." R.C. 2923.13, regarding having a weapon while under a disability, provides that indicted or convicted felons shall not "knowingly acquire, have, carry or use any firearm or dangerous ordnance." R.C. 2925.07, regarding preparation of marijuana for sale, provides that "no person shall knowingly prepare * * * for distribution, or distribute a controlled substance."
At trial, the State presented evidence that the police found numerous items of drug paraphernalia with cocaine residue on them in appellant's home. The State also presented testimony that the drug paraphernalia found in appellant's home was consistent with drug trafficking. The State also presented evidence that appellant was a convicted felon and that the police found an extensive stockpile of weapons in his home. This evidence, coupled with appellant's admission that he lived in the house alone, was sufficient to establish appellant's possession of the cocaine and weapons and preparation of marijuana for sale. Therefore, the trial court did not err in denying appellant's Rule 29 motions for acquittal.
Appellant's thirteenth and fourteenth assignments of error are overruled.
 XV. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS SENTENCED TO CONSECUTIVE TERMS OF IMPRISONMENT.
Finally, appellant asserts that the trial court erred in imposing consecutive sentences. We agree.
R.C. 2929.14(E)(4) governs the imposition of consecutive sentences and provides in pertinent part:
 If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 1919.18 of the Revised Code, or was under post-release control for a prior offense;
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single court of conduct adequately reflects the seriousness of the offender's conduct;
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
R.C. 2929.19(B)(2) provides that:
 The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:
* * *
 (c) If it imposes consecutive sentences under section 2929.12 of the Revised Code, its reasons for imposing the consecutive sentences.
Thus, R.C. 2929.14(E)(4) requires the trial court to make at least three findings prior to sentencing an offender to consecutive sentences. Moreover, pursuant to R.C. 2929.19(B)(2), the trial court must also give the reasons behind its findings.
Here, although the trial court noted that appellant had a criminal history, had committed the instant offenses while in possession of a firearm and had not shown any remorse for the offenses, the trial court did not make the findings required by statute. Accordingly, we must remand for resentencing.
Appellant's fifteenth assignment of error is sustained.
Conviction affirmed; remanded for resentencing for further proceedings consistent with the opinion herein.
It is, therefore, ordered that appellant and appellee equally share the costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, J. and JOHN T. PATTON, J. (Retired Judge of ofthe Eighth Appellate District, sitting by assignment), CONCUR.
[1] In fact, there is no ruling on the record regarding appellant's motion to suppress. It is apparent, however, that the motion was denied.