[Cite as *State v. Rigel*, 2017-Ohio-6906.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 2016-CA-50 |
| | : | |
| v. | : | T.C. NO. 16-CR-29 |
| | : | |
| TIMOTHY RIGEL | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the 21st day of July, 2017.

. . . . . . . . . . .

MEGAN M. FARLEY, Atty. Reg. No. 0088515, Assistant Prosecuting Attorney, 50 E. Columbia Street, Suite 449, Springfield, Ohio 45502
       Attorney for Plaintiff-Appellee

JOHNNA M. SHIA, Atty. Reg. No. 0067685, 130 W. Second Street, Suite 1624, Dayton, Ohio 45402
       Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Timothy Rigel appeals his conviction and sentence for one count of possession of marijuana, in violation of R.C. 2925.11(A), a felony of the fifth degree. Rigel filed a timely notice of appeal on August 24, 2016.

{¶ 2} The record reflects that on January 25, 2016, Rigel was indicted for one count of illegal cultivation of marijuana, in violation of R.C. 2925.04(A), a felony of the third degree; and one count of possession of marijuana (equals or exceeds 5,000 grams but less than 20,000 grams), in violation of R.C. 2925.11(A), a felony of the third degree. The charges stemmed from evidence obtained when police executed a warrant to search several locations, including a warehouse located at 1028 Wheel Street in Springfield, Ohio, that was allegedly owned and/or operated by Rigel. At his arraignment on January 27, 2016, Rigel pled not guilty to the charged offenses, and the trial court set his bond at $100,000.00. Rigel posted bond and was released on his own recognizance.

{¶ 3} On March 2, 2016, Rigel filed a motion to suppress and a request for a hearing on said motion. In his motion to suppress, Rigel challenged the four search warrants issued by the trial court as they applied to him and the properties that he owned. No evidentiary hearing was held on the motion to suppress since defense counsel indicated that he was satisfied with submission of the motion to the trial court on the four corners of the search warrants themselves.

{¶ 4} Thereafter, on May 17, 2016, the trial court issued a decision sustaining in part and overruling in part Rigel's motion to suppress. Analyzing each of the four search warrants utilized by the Clark County Sheriff's Office, the trial court overruled Rigel's motion to suppress with respect to search warrants #1 (Thermal Imaging of 826 Sylvan

Shores Drive); #2 (GPS tracking of Rigel's vehicle), and #4 (search of Rigel's properties located at 826 Sylvan Shores Drive and 1028 Wheel Street), while sustaining his challenge to search warrant #3 (trash and odor warrant at 1028 Wheel Street).[1]

{¶ 5} On July 19, 2016, Rigel entered a no contest plea to an amended charge of one count of possession of marijuana, in violation of R.C. 2925.11(A), a felony of the fifth degree. On August 16, 2016, the trial court sentenced Rigel to two years of community control sanctions and six months in the county jail. This court stayed imposition of the jail sentence pending the outcome of the instant appeal.

{¶ 6} It is from this judgment that Rigel now appeals.

{¶ 7} Rigel's first assignment of error is as follows:

{¶ 8} "TRIAL [COURT] ERRED BY RULING ON THE MOTION TO SUPPRESS WITHOUT HOLDING THE REQUIRED EVIDENTIARY *FRANKS* HEARING."

{¶ 9} In his first assignment, Rigel contends that the trial court erred when he requested but did not receive an evidentiary hearing pursuant to *Franks v. Delaware* before it ruled on his motion to suppress. *Id.* at 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

{¶ 10} "Pursuant to *Franks,* a search violates the Fourth Amendment's prohibition on unreasonable searches if it is conducted pursuant to a warrant that is based upon an affidavit containing one or more material misrepresentations, and these misrepresentations were made knowingly or in reckless disregard for the truth." (Citations omitted.) *State v. Miser,* 2d Dist. Montgomery No. 25105, 2013–Ohio–1583, ¶ 12.

---

[1] Since the trash/odor search warrant issued on August 4, 2015, was ultimately suppressed by the trial court, we need not analyze it in the instant appeal.

" 'Reckless disregard' means that the affiant had serious doubts of an allegation's truth. * * * Omissions count as false statements if 'designed to mislead, or * * * made in reckless disregard of whether they would mislead, the magistrate.' " (Citations omitted.) *Id.* " '[E]xcept in the very rare case where the defendant makes a strong preliminary showing that the affiant with an intention to mislead excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, *Franks* is inapplicable to the omission of disputed facts.' " (Citation omitted.) *State v. Blaylock,* 2d Dist. Montgomery No. 24475, 2011–Ohio–4865, ¶ 15.

**{¶ 11}** "[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks*, 438 U.S. at 155–156, 98 S.Ct. 2674, 57 L.Ed.2d 667. "In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.* at 156.

**{¶ 12}** As previously discussed, on March 2, 2016, Rigel filed a motion to suppress all of the evidence obtained as a result of the execution of search warrants issued on May 5, 2015, June 2, 2015, August 4, 2015, and August 10, 2015. On April 20, 2016, the trial court issued an entry providing him a seven-day window in which "to file a motion for an

evidentiary hearing in support of his Motion to Suppress." The entry states in pertinent part:

> This matter has been assigned to this Court for the limited purpose of reviewing four search warrants which are at the heart of Defendant's Motion to Suppress filed March 2, 2016. Pursuant to this assignment, the Court met in conference with defense counsel, Argeri Lagos, and assistant prosecuting attorney, Andrew Picek.
>
> At the request of defense counsel, the Court now sets the matter for seven days to permit defense counsel the opportunity to file a motion for an evidentiary hearing in support of his motion to suppress.

**{¶ 13}** In the same entry, the trial court provided the State with an additional five days in which to respond to defense counsel's hearing motion if one was indeed filed. Lastly, the trial court indicated that it would review the matter on May 5, 2016, and enter a decision regarding whether a hearing would be held or the motion to suppress would be decided without a hearing. On April 28, 2016, the State filed a response to Rigel's motion to suppress in which it noted that defense counsel had indicated that he "was not pursuing any further evidentiary hearing regarding [the motion to suppress] and would be satisfied with submission of the motion on the search warrants itself."[2] We note that the record indicates that no subsequent motion requesting an evidentiary hearing was filed by Rigel nor defense counsel. Shortly thereafter, the trial court, without an evidentiary hearing, issued its decision sustaining in part and overruling in part Rigel's motion to

---

[2] We note that the State mistakenly uses the phrase "further evidentiary hearing" as the trial court had placed defense counsel on notice that there would only be four-corners review absent a request for an evidentiary hearing thereafter.

suppress.

{¶ 14} As noted above, after the instant case was transferred from the assigned judge to another judge for the limited purpose of determining the suppression issue, defense counsel was explicitly provided with an opportunity to request an evidentiary hearing in addition to a four-corners review on the motion to suppress. Based on the record before us, it is clear that defense counsel elected not to request a *Franks* hearing, but rather chose to have the trial court proceed to review the motion to suppress on its merits. Accordingly, the record establishes that the trial court did not deny Rigel a *Franks* hearing on his motion to suppress. The decision to not pursue an evidentiary hearing and/or establish entitlement thereto pursuant to *Franks* was made solely by defense counsel for Rigel and hence is waived.

{¶ 15} Rigel's first assignment of error is overruled.

{¶ 16} Rigel's second assignment of error is as follows:

{¶ 17} "THE TRIAL COURT ERRED WHEN IT OVERRULED RIGEL'S MOTION TO SUPPRESS BECAUSE THE FOUR CORNERS OF EACH OF THE SEARCH WARRANTS ISSUED FAIL TO PROVIDE THE REQUISITE PROBABLE CAUSE."

{¶ 18} In his second assignment, Rigel argues that the trial court erred when it overruled his motion to suppress with respect to the search warrants issued on May 5, 2015, June 2, 2015, and August 10, 2015. Specifically, Rigel argues that the trial court did not have a substantial basis for concluding that probable cause existed to issue the search warrants. Rigel challenges the search warrants issued in the instant case on four separate bases: 1) the staleness of the information relied upon; 2) when the facts relied upon occurred; 3) whether the information from the confidential informant was reliable;

and 4) whether there is a nexus between the alleged crime, the objects to be seized, and the place to be searched.

{¶ 19} In ruling on a motion to suppress, the trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford,* 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994); *State v. Knisley,* 2d Dist. Montgomery No. 22897, 2010-Ohio-116, ¶ 30. Accordingly, when we review suppression decisions, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Retherford* at 592, 639 N.E.2d 498. "Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id.*

{¶ 20} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution provide that search warrants may only be issued upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the person and/or things to be seized. *See also State v. Jones,* 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, ¶ 11.

{¶ 21} We begin our analysis with the governing legal standards. Under Crim.R. 41, a request for a search warrant requires a sworn affidavit "establishing the grounds for issuing the warrant." Crim.R. 41(C)(1). The judge may issue a search warrant if the judge finds, based on the information in the affidavit, that "probable cause for the search exists." Crim.R. 41(C)(2). "The finding of probable cause may be based upon hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the

information furnished." *Id.* "In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *State v. George,* 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph one of the syllabus, quoting *Illinois v. Gates,* 462 U.S. 213, 238–239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

{¶ 22} "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for * * * conclud[ing]' that probable cause existed." *Gates* at 238–239, quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *State v. Castagnola,* 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 35. Ordinarily, "a probable cause inquiry must be confined to the four corners of the affidavit." *State v. Klosterman,* 114 Ohio App.3d 327, 333, 683 N.E.2d 100 (2d Dist.1996). In reviewing whether a search warrant has been issued upon probable cause, courts must examine the totality of the circumstances. *Jones,* 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, at ¶ 15.

{¶ 23} Trial courts and appellate courts "should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *State v. George,* 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph two of the syllabus; *Jones,* 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, at ¶ 14.

{¶ 24} Regarding informants, as this Court has previously noted:

"Courts have generally recognized three categories of informants: (1) the identified citizen informant, (2) the known informant, i.e., someone from the criminal world who has a history of providing reliable tips, and (3) the anonymous informant." *State v. Jordan*, 104 Ohio St.3d 21, 2004–Ohio–6085, 817 N.E.2d 864, ¶ 36, citing *Maumee v. Weisner*, 87 Ohio St.3d 295, 300, 720 N.E.2d 507 (1999).

"Where a confidential or anonymous informant is the source of the hearsay, the 'informant's veracity, reliability and basis of knowledge are all highly relevant' in a totality of the circumstances probable cause determination. *Gates* at 230 (internal quotations omitted). There must be some basis in the affidavit to indicate the informant's credibility, honesty or reliability. An affidavit which contains detailed information from informants (permitting an inference that illegal activity was personally observed by the informants), police corroboration of an informant's intelligence through its own independent investigation, or additional testimony by the affiant helps to bolster and substantiate the facts contained within the affidavit. While individual facts and statements themselves may not separately support a probable cause determination, a reviewing court must weigh all of the components together because '[p]robable cause is the sum total of [all] layers of information.' " (Citations omitted.) *State v. Harry*, 12th Dist. Butler No. CA2008–01–0013, 2008–Ohio–6380, ¶ 20.

*State v. Mitchell*, 2d Dist. Montgomery No. 25402, 2013–Ohio–622, ¶ 19–20.

**{¶ 25}** As we have further noted, while an informant's veracity, reliability and basis

of knowledge are highly relevant factors to the determination of probable cause, "those factors are not separate and independent requirements but, rather, 'intertwined issues that may usefully illuminate the commonsense, practical question whether there is "probable cause" to believe that contraband or evidence is located in a particular place.' " *State v. Harris*, 2d Dist. Montgomery No. 18913, 2002 WL 1041868, *1 (May 24, 2002), quoting *Gates* at 320. "Accordingly, an informant's tip may be reliable despite the deficiency in one factor where there is a strong showing of another factor or some other indicia of reliability." *Id.*, citing *Gates* at 233.

{¶ 26} Finally, we note that the "Supreme Court of the United States held that evidence obtained in violation of the Fourth Amendment by an officer acting in objectively reasonable reliance on a search warrant issued by a neutral and detached magistrate need not be excluded from state criminal prosecution. (Citations omitted)." *State v. Arnold*, 2d Dist. Clark No. 2016 CA 20, 2017-Ohio-559, ¶ 48.

**Thermal Image Search Warrant Issued on May 5, 2015**

{¶ 27} On May 5, 2015, Detective Andy Reynolds was issued a search warrant to conduct thermal imaging scans for five structures, to wit: 4303 Detrick-Jordan Pk., 310 Villa Road, 922 Oak Street, 826 Sylvan Shores, and 127 West Grand, all located in Springfield, Ohio. Property records retrieved by the police established that 826 Sylvan Shores and 127 West Grand were owned by Timothy Rigel. The affidavit stated as follows:

> The Clark County Sheriff's Office has been conducting a suspected
> marijuana growing operation being operated by a Timothy and Nicholas
> Rigel. Timothy G. Rigel resides at 826 Sylvan Shores South Vienna, Ohio

and Nicholas resides at 709 Mayhill Springfield, Ohio.

In October of 2014, I spoke with a Confidential Informant who advised that she/he can purchase Marijuana from Jacob Collins at 310 Villa Rd. Springfield, Ohio. The CI advised that the residence contains an indoor Marijuana grow in the basement of the home. The CI advised that the operation is ultimately ran by Timothy G. Rigel. Mr. [Timothy] Rigel and family members own several rental properties throughout the City of Springfield and Clark County. I obtained records from the Clark County Auditor's Office that 310 Villa Rd. belongs to Herold Property Management/Nicholas Rigel. On October 22 and 29, 2014, the CI did make controlled purchases of Marijuana from Jacob Collins, with each buy being one ounce of Marijuana for [$]250.00 dollars from the 310 Villa Rd. address. *** The CI stated that the marijuana was sold to the CI by Jacob Collins inside 310 Villa Road. ***.

The CI went on to say that Jacob Collins was previously residing at 4303 Detrick-Jordan Pk Springfield, Ohio, which was found to belong to Nicholas Rigel. Having a personal relationship with Jacob Collins, the C.I. has personal knowledge that Jacob Collins previously lived at the 4303 Detrick-Jordan Pk Springfield, Ohio because s/he visited him there. I then obtained records from the Auditor's Office for all properties owned by Herold Property Management/Nicholas Rigel. The findings were that they owned all of the following addresses: 4303 Detrick Jordan Springfield, 310 Villa Rd Springfield, 1015 Maiden Lane Springfield, 709 Mayhill Springfield, 2015

Irwin Ave Springfield, 922 Oak St Springfield and 1811 Hillside Springfield, Ohio. I then secured a Grand Jury Subpoena to obtain Electric records from First Energy for these addresses. Upon viewing the records, it was found that 4303 Detrick Jordan, 310 Villa Rd, and 709 Mayhill were all in Nicholas Rigel's name and all bills were mailed to 310 Villa Rd Springfield, Ohio. The account for the dwelling listed as 922 Oak St is in the name of Joe Seng. The 4303 Detrick Jordan Pk, 310 Villa Rd and 922 Oak St residences were found to have extremely high Kilowatt (KWH) usage readings ***.

***

I then checked with the Clark County Auditor's Office for all properties belonging to Timothy R. Rigel. I located several properties belonging to Mr. Rigel as follows: 826 Sylvan Shores Dr South Vienna, 1308 and 1310 W. High St Springfield, 1400 Innisfallen Springfield, 1827 W. High St Springfield, 425 E. Rose St Springfield, 633 and 635 S. Wittenberg Springfield, 1004 S. Center St Springfield, 127 W. Grand St Springfield, 1102 and 1104 S. Fountain Ave Springfield, 1205 S. Limestone Springfield, [and] 902 and 902 ½ Clifton Ave Springfield, Ohio. I then secured a Grand Jury Subpoena to obtain Electric records from First Energy for these addresses. *Upon viewing the records it was found that 826 Sylvan Shores South Vienna, along with 127 W. Grand, Springfield, were found to have extremely high Kilowatt (KWH) usage readings. The 826 Sylvan Shores Dr is billed to Timothy G. Rigel at that address.* The 127 W. Grand address

is billed to Sona Storer at that address.

*The records received from First Energy from 826 Sylvan Shores Dr South Vienna from February 21, 2014 to February 23, 2015 as follows:* 7,875 KHW, 4,235 KHW, 2,278 KHW, 1,856 KHW, 1,752 KHW, 1,170 KWH, 1,484 KHW, 1,931 KHW, 5,827 KHW, 5,004 KHW, 7,740 KHW and 11,506 KHW.

*The records received from First Energy from 127 W. Grand Ave from February 12, 2014 to February 12, 2015 as follows:* 1,707 KHW, 1,305 KHW, 4,689 KHW, 1,925 KHW, 896 KHW, 985 KHW, 1,376 KHW, 1,853 KHW, 4,498 KHW, 4,815 KHW, 5,043 KHW, 4,603 KHW.

*Affiant, through marijuana growing operations, knows that the above is a higher than normal Kilowatt consumption for dwellings similar in size to the dwelling. Affiant also reviewed usage for other residences of similar size to these for the same time periods in the same general area and found the consumption for the listed addresses to be significantly higher than the others.*

**{¶ 28}** In his affidavit, Det. Reynolds sought evidence of "dissipating heat, surface temperature variables and thermal image information which, when considered with other information developed in this case, may constitute evidence of a crime concerning the Manufacturing, Possession, or Delivery of \*\*\* Marijuana." Det. Reynolds further stated that he had been employed as a police officer for approximately sixteen years and was now responsible for investigating illegal drug activity in Clark County, Ohio.

**{¶ 29}** As noted by the trial court, Det. Reynolds' affidavit related the following facts

regarding the alleged involvement of Timothy Rigel in the suspected marijuana grow operation. The Clark County Sheriff's Office had been conducting an investigation of a suspected marijuana grow operation in Springfield, Ohio, and surrounding areas. Timothy Rigel resides at 826 Sylvan Shores in South Vienna, Ohio. Additionally, Det. Reynolds stated that, through the use of his confidential informant (CI), he had arranged two controlled drug buys at 310 Villa Road in Springfield, Ohio, which is owned by Nicholas Rigel. On October 22 and 29, 2014, Det. Reynolds' CI engaged in the two controlled purchases of marijuana at 310 Villa Road from an individual named Jacob Collins. The purchases were recorded. The CI also informed Det. Reynolds that marijuana was being grown in the basement of the residence at 310 Villa Road. Records also established that energy usage at 310 Villa Road from October of 2013 through October of 2014 was "extremely high." The CI stated that the marijuana grow operation is "ultimately ran by Timothy G. Rigel." "Mr. [Timothy] Rigel and family members" own several rental properties in Clark County, Ohio. Det. Reynolds also stated that energy usage at 826 Sylvan Shores between February of 2013 and February of 2014 was also found to be extremely high.

{¶ 30} The CI's statement that that the marijuana grow operation is "ultimately ran by Timothy G. Rigel," standing alone, is merely conclusory at best. However, the CI used by Det. Reynolds successfully completed two controlled marijuana buys at 310 Villa Road, a residence owned by Nicholas Rigel, a relative of Timothy Rigel. In our view, the controlled drug buys on October 22 and 29, 2014, can be used to bolster the credibility of the CI regarding his or her knowledge that Timothy Rigel was the leader of the marijuana grow operation.

**{¶ 31}** The direct evidence in the affidavit which supports Det. Reynolds' belief that Timothy Rigel is involved in the marijuana grow operation is the "extremely high" energy usage at his residence located at 826 Sylvan Shores. Nevertheless, when viewed in conjunction with the CI's two successful controlled drug buys at a residence owned by a family member, the evidence of high energy usage in the affidavit underlying the search warrant was sufficient to establish probable cause to perform a thermal imaging search of Timothy Rigel's residence located at 826 Sylvan Shores in South Vienna, Ohio. *Contrast State v. Leibold*, 2d Dist. Montgomery No. 25124, 2013-Ohio-1371, ¶ 33 ("[w]e hesitate to approve scenarios which would permit police to obtain a warrant based solely on *** random inspection of electricity usage records, even for a residence which had been the subject of a prior search"). Unlike the scenario in *Leibold*, the inspection of Timothy Rigel's energy usage records was not a random search. Along with Nicholas Rigel and other "relatives," Timothy Rigel had been directly implicated by an otherwise credible CI as being the individual in charge of a large scale marijuana grow operation.

**{¶ 32}** Accordingly, we find that the affidavit underlying the thermal imaging search warrant issued on May 5, 2015, was sufficient to establish probable cause, and the trial court did not err when it denied Rigel's motion to suppress with respect to that particular search warrant.

**Electronic Tracking Device Search Warrant Issued on June 2, 2015**

**{¶ 33}** On June 2, 2015, Det. Reynolds was issued a search warrant to attach an electronic tracking device to Timothy Rigel's Chevy Silverado pickup truck. After the tracking device was attached, the search warrant necessarily permitted Det. Reynolds to monitor the movement and location of the truck "if said vehicle is found at 826 Sylvan

Shores Drive in South Vienna, Ohio." As previously stated, said address is Timothy Rigel's residence. The search warrant permitted Det. Reynolds to monitor the movement and location of the tracking device attached to Timothy Rigel's truck for a period of forty-five days after issuance of the warrant.

{¶ 34} In support of the search warrant, Det. Reynolds stated the following in the his affidavit:

1. The suspect Timothy R. Rigel operates the above said vehicle from his residence located at 826 Sylvan Shores Dr South Vienna, Clark County, Ohio and drives it to a suspected indoor Marijuana grow operation at 310 Villa Rd., and other suspect marijuana grow operations.

\*\*\*

4. The Clark County Sheriff's Office has been conducting an investigation into a suspected marijuana growing operation being operated by a Timothy and Nicholas Rigel. Timothy Rigel resides at 826 Sylvan Shores South Vienna, Ohio and Nicholas resides at 709 Mayhill Springfield Ohio.

5. In October of 2014, I spoke with a Confidential Informant who advised that she/he can purchase Marijuana from Jacob Collins at 310 Villa Rd. Springfield, Ohio. The CI advised that the residence contains an indoor Marijuana grow in the basement of the home. The CI advised that the operation is ultimately ran by Timothy G. Rigel. Mr. [Timothy] Rigel and family members own several rental properties throughout the City of Springfield and Clark County. I obtained records from the Clark County Auditor's Office that 310 Villa Rd. belongs to Herold Property

Management/Nicholas Rigel. I also obtained numerous electric usage records from Ohio Edison, which based upon my training and experience indicated likely marijuana grows at up to 5 residences owned by Rigel and family members.

6. On October 22 and 29, 2014, the CI did make controlled purchases of Marijuana from Jacob Collins, with each buy being one ounce of Marijuana for $250.00 dollars from the 310 Villa Rd address.

7. The suspect [Timothy Rigel] has picked up over thirty canisters of $CO_2$ that was purchased from Buckeye Gas Company in the last twelve months. $CO_2$ is commonly known to be used in indoor Marijuana grow operations, and based upon the quantity of $CO_2$ being picked up, and based upon my training and experience and other information from this investigation, it is likely that the $CO_2$ is being used in marijuana grow operations.

8. I personally have witnessed the suspect pick up canisters of $CO_2$ from Buckeye Gas Company in the last three weeks. I have also received information from a person with personal knowledge of the transactions for the canisters that Tim Rigel pays cash for the canisters and has purchased over 30 canisters in the past 12 months. In the last three weeks, I also observed Rigel use the above listed Chevy Silverado to pick up the canisters from Buckeye Gas Company.

{¶ 35} As with the first search warrant issued on May 5, 2015, the second warrant issued on June 2, 2015, relies on statements made by Det. Reynolds' CI who made two controlled marijuana purchases at 310 Villa Road from Jacob Collins. The CI also stated

that there was a marijuana grow operation in the basement of that address. Additionally, Det. Reynolds' affidavit states that the CI implicated Timothy Rigel as the leader of a marijuana grow operation in Clark County. Det. Reynolds' affidavit in support of the second warrant contains facts which clearly connect Timothy Rigel to the suspected marijuana grow operation. Specifically, Det. Reynolds stated that he observed Timothy Rigel drive his truck from his residence located at 826 Sylvan Shores Drive to the 310 Villa Road address where at least two marijuana purchases have occurred. Additionally, Det. Reynolds stated that he had personal knowledge that Timothy Rigel purchased several canisters of $CO_2$ from the Buckeye Gas Company with cash and transported the canisters in his truck. Det. Reynolds further stated that $CO_2$ is "commonly known to be used in indoor marijuana grow operations." Det. Reynolds also reiterated in his affidavit that Timothy Rigel owned properties which had elevated energy uses which indicated, based upon his experience and training, the presence of marijuana grow operations.

{¶ 36} In our view, the information contained in Det. Reynolds' affidavit created a substantial basis to connect Timothy Rigel with the suspected marijuana grow operation being conducted in Clark County. Accordingly, we find that the affidavit was sufficient to establish probable cause to issue a search warrant to attach an electronic tracking device to Timothy Rigel's Chevy Silverado pickup truck in order to monitor its movement and location. Therefore, the trial court did not err when it denied Timothy Rigel's motion to suppress with respect to the search warrant for the electronic tracking device attached to his truck.

**Search Warrant Issued on August 10, 2015, for 826 Sylvan Shores Drive and 1028 Wheel Street**

{¶ 37} On August 10, 2015, Det. Reynolds was issued a warrant for the search of two structures owned by Timothy Rigel, namely 826 Sylvan Shores Drive and a warehouse located at 1028 Wheel Street in Springfield, Ohio. The warrant also provided for the search of three other locations owned by Nicholas Rigel. In support of the search warrant, Det. Reynolds stated the following in the his affidavit:

2. In 2010, Springfield Police received information from a Confidential Source (CS #1). CS #1 stated that Timothy Rigel, Jr. had been growing marijuana for a long time, and that Rigel helped Deron Castle, Jr. get set up with a marijuana growing operation at 1028 Wheel Street, where Castle had a land contract to purchase the building.

3. In 2010, Springfield Police conducted a search warrant at 1028 Wheel Street for a suspect marijuana growing operation there. The property at that time was still owned by Timothy Rigel. Springfield Police located inside 1028 Wheel Street the remnants of a previously operated marijuana growing operation that had been recently completed, including lamps, electrical equipment, and small amounts of plant waste and residue. Detectives spoke with Timothy Rigel who advised that Deron Castle, Jr. had a land contract for the purchase of 1028 Wheel Street, and that Deron Castle, Jr. was in possession of 1028 Wheel Street at that time. Deron Castle, Jr. is currently serving an 11 year prison term after pleading to charges of trafficking in marijuana and money laundering, when he was arrested in possession of approximately 1500 pounds of marijuana.

4. In May of 2012, Detectives with the Springfield Police Division

interviewed a Confidential Source (CS #2) about Timothy Rigel. The CS stated that Timothy Rigel rents out houses to people and sets up marijuana growing operations inside the houses. The tenant's job is to operate the growing operation while living there. Timothy Rigel then collects the finished product, and will take all of the other evidence away to be destroyed. After Rigel has sold the marijuana, the tenant is paid a percentage based upon the value of the growing operation. The CS indicated that the CS had engaged in an agreement like this with Timothy in the past.

***

11. A search warrant was obtained to apply a G.P.S. tracking device on Timothy Rigel's Chevy Silverado with Ohio plate # GIE2554 on June 2, 2015. According to the G.P.S. tracking reports, the truck traveled directly from his residence at 826 Sylvan Shores Drive and going directly to 1028 Wheel Street. The G.P.S. tracking records also show the truck coming directly from Buckeye Bottle Gas Company, where Mr. Rigel has bought several tanks of carbon dioxide and go directly to 1028 Wheel Street.

a. Carbon dioxide is frequently used in the indoor growing of marijuana.

***

14. Based upon all of the above information, it is clear that Timothy Rigel, Jr. and Nicholas Rigel have been conducting a large scale marijuana growing operation for a long period of time at all of the above locations and others, and therefore all of the above locations are likely to contain evidence

of cultivation of marijuana, whether an active marijuana growing operation, other equipment, proceeds, or marijuana prepared for distribution.

{¶ 38} We note that the affidavit also contained statements made by Det. Reynolds in which he indicated that both 826 Sylvan Shores Drive and 1028 Wheel Street had very high levels of energy usage. The records were compiled from the months of January of 2015 through June of 2015. We further note that as a means of comparison, Det. Reynolds retrieved and attached the electric usage records for the address of *888* Sylvan Shores Drive, which indicated significantly lower energy usage levels than Timothy Rigel's nearby residence at 826 Sylvan Shores Drive. Det. Reynolds stated that he did not request comparison records for the warehouse at 1028 Wheel Street because none of the neighboring businesses were of similar size or construction. The instant affidavit also mentions evidence obtained as a result of the trash/odor search warrant issued on August 4, 2015. Nevertheless, the affidavit is otherwise supported by probable cause as determined in the decision rendered by the trial court, as well as the initial determination made by the issuing magistrate.

{¶ 39} Timothy Rigel argues that the affidavit contains stale evidence that should not have been considered by the issuing judge. Specifically, Timothy argues that the 2010 investigation by Springfield police into a suspected marijuana grow operation at the 1028 Wheel Street warehouse did not involve him, and he asserts that he was never charged in connection with that investigation. Timothy further asserts that the CI who informed police of the 2010 grow operation was not credible. Timothy points out that at that time, Deron Castle, Jr. had possession of the 1028 Wheel Street property where the remnants of the grow operation were found.

**{¶ 40}** Additionally, Timothy challenges the veracity of the second CI who informed police in 2012 that he rented residences to people and then set up marijuana grow operations for the tenants to manage. The CI further stated that Timothy would collect the marijuana, destroy the evidence, sell the product, and give the tenant a share of the profits. Significantly, Det. Reynolds stated that the second CI indicated that he or she had actually entered into this type of agreement with Timothy in the past.

**{¶ 41}** While the 2010 grow operation at the 1028 Wheel Street and the information from the second CI in 2012 is clearly old information, it is not dispositive regarding the issue of staleness. An affidavit in support of a search warrant must present timely information and include facts so closely related to the time of issuing the warrant as to justify a finding of probable cause at that time. *State v. Jones,* 72 Ohio App.3d 522, 526, 595 N.E.2d 485 (6th Dist.1991). No arbitrary time limit dictates when information becomes "stale." *Id.* The test is whether the alleged facts justify the conclusion that certain contraband remains on the premises to be searched. *State v. Floyd,* 2d Dist. Darke No. 1389, 1996 WL 139787 (Mar. 29, 1996). If a substantial period of time has elapsed between the commission of the crime and the search, the affidavit must contain facts that would lead the judge to believe that the evidence or contraband is still on the premises before the judge may issue a warrant. *State v. Yanowitz,* 67 Ohio App.2d 141, 147, 426 N.E.2d 190 (8th Dist.1980).

**{¶ 42}** "Ohio courts have identified a number of factors to consider in determining whether the information contained in an affidavit is stale, including the character of the crime, the criminal, the thing to be seized, as in whether it is perishable, the place to be searched, and whether the affidavit relates to a single isolated incident." *State v. Mays,*

2d Dist. Montgomery No. 23986, 2011-Ohio-2684, ¶ 22, citing *State v. Ingold,* 10th Dist. Franklin No. 07AP–648, 2008–Ohio–2303, ¶ 23.

**{¶ 43}** In the instant case, it is clear that CI supplied information from 2010 and 2012, respectively, factored directly into the ongoing investigation conducted by Det. Reynolds in 2015. Specifically, the G.P.S. tracking device attached to Timothy's vehicle indicated that he traveled directly from his residence at 826 Sylvan Shores Drive to the warehouse located at 1028 Wheel Street. The tracking records also establish that the truck traveled to Buckeye Bottle Gas Company, where Mr. Rigel has bought several tanks of carbon dioxide, and then traveled directly to the warehouse at 1028 Wheel Street. As previously stated, carbon dioxide is "frequently used in the indoor growing of marijuana." Additionally, the energy usage at both 826 Sylvan Shores Drive and 1028 Wheel Street was "extremely high" which is another indicator of a marijuana grow operation. All of these facts taken together create a reasonable inference that Timothy Rigel was conducting an illegal marijuana grow operation and that evidence of such would be found at 826 Sylvan Shores Drive and/or 1028 Wheel Street. Accordingly, we find that the information contained in the affidavit was not stale and provided adequate probable cause for the judge to issue a warrant to search Rigel's residence located at 826 Sylvan Shores Drive and the warehouse he owned at 1028 Wheel Street where the contraband was ultimately found.

**{¶ 44}** Rigel's second assignment of error is overruled.

**{¶ 45}** Rigel's third and final assignment of error is as follows:

**{¶ 46}** "RIGEL'S SENTENCE IS CONTRARY TO LAW BECAUSE THE TRIAL COURT ABUSED ITS DISCRETION IN APPLYING THE STATUTORY GUIDELINES."

{¶ 47} In his third assignment, Rigel argues that the trial court erred when it ordered him to serve two years of community control sanctions and six months in jail for one count of possession of marijuana, in violation of R.C. 2925.11(A), a felony of the fifth degree. Specifically, Rigel argues that the record establishes that the trial court abused its discretion in applying the statutory guidelines for felony sentencing.

{¶ 48} "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King,* 2013–Ohio–2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). However, in exercising its discretion, a trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard,* 194 Ohio App.3d 500, 2011–Ohio–3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis,* 109 Ohio St.3d 54, 2006–Ohio–855, 846 N.E.2d 1, ¶ 38.

{¶ 49} The principles and purposes of felony sentencing are set forth in R.C. 2929.11. The statutory "seriousness" and "recidivism" factors that guide a court's sentencing discretion are found in R.C. 2929.12. We have found that a trial court need not expressly state that it has considered R.C. 2929.11 and R.C. 2929.12. *See, e.g., State v. Guy,* 2d Dist. Clark Nos. 2015–CA–28, 2015–CA–29, 2016–Ohio–425, ¶ 16, quoting *State v. Neff,* 2d Dist. Clark No. 2012–CA–31, 2012–Ohio–6047, ¶ 5. The trial court stated in its sentencing entry that it had considered the principles and purposes of sentencing found in R.C. 2929.11. (Doc. # 23, at 1).

{¶ 50} Additionally, the judgment entry of conviction states in pertinent part:

The Court considered the record, oral statements of counsel, the

defendant's statement, the pre-sentence investigation report, and the principles and purposes of sentencing under Ohio Revised Code Section 2929.11. The Court finds that community control is mandatory.

**{¶ 51}** In *State v. Marcum,* the Ohio Supreme Court made clear that the standard contained in R.C. 2953.08(G)(2) applies to all felony sentencing-term challenges. *Id.*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231. In utilizing the standard of review set forth in R.C. 2953.08(G)(2), we no longer use an abuse of discretion standard when reviewing felony sentences. *Id.* at ¶ 9.

**{¶ 52}** In the instant case, the trial court properly considered the criteria found in R.C. 2929.11, and the record does not clearly and convincingly fail to support its decision to impose a sentence of two years of community control sanctions and six months in the county jail for one count of possession of marijuana, in violation of R.C. 2925.11(A), a felony of the fifth degree. R.C. 2929.13(B)(1)(a) states that if all of the provisions listed in division (B)(1)(a)(i)- (iv) apply, the court shall sentence an offender convicted of a fourth or fifth degree felony to at least one year of community control. The conditions set forth for mandatory community control in R.C. 2929.13(B)(1)(a) (i)- (iv) were met in the instant case. Additionally, since Rigel's PSI indicated that he had a prior misdemeanor record, the trial court did not err when it sentenced him to a term of six months in the county jail as a condition of his community control.

**{¶ 53}** Having reviewed the entire record, including but not limited to the sentencing transcript and the PSI, we are unable to conclude that the sentence Rigel received was contrary to law.

**{¶ 54}** Rigel's third and final assignment of error is overruled.

{¶ 55} All of Rigel's assignments of error having been overruled, the judgment of the trial court is therefore affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and TUCKER, J., concur.

Copies mailed to:

Megan M. Farley
Johnna M. Shia
Hon. Douglas M. Rastatter